CENTRAL STATE BANK v. EDWARDS et al.—111 S. W. (2d), 873.

Western Section.    February 8, 1937.

Petition for Certiorari denied by Supreme Court, November 27, 1937.

420

Essary & Essary, of Lexington, and N. R. Barham, of Jackson, for complainant.

Hu C. Anderson, of Jackson, and J. I. Galbraith, of Henderson, for defendants.

DeWITT, J. This controversy is between the Central State Bank of Lexington, complainant, and Mrs. Loraine E. Edwards, widow of C. W. Edwards, deceased, defendant, over the right to a fund in the registry of the chancery court in this cause, paid in under a cross-bill of interpleader by the Mutual Benefit Life Insurance Company. Each of said parties claims the whole fund—the bank by assignment by C. W. Edwards and Mrs. Edwards of four policies of insurance upon his life issued by said company, and pledge thereof by C. W. Edwards as collateral security for loans made to him by the bank; Mrs. Edwards as the beneficiary originally designated in the policies. The fund amounts to $8,482.25.

The original bill was filed by the bank on May 28, 1932, while C. W. Edwards was living and he, Mrs. Edwards, and the insurance company were made defendants. Issues were made by appropriate pleadings, the facts were stipulated in writing, but while the cause was being heard in April, 1934, C. W. Edwards died. The cause was revived as to his widow and children. The chancellor appointed an administrator ad litem of the estate of C. W. Edwards and a guardian ad litem for his minor children. In the original bill the bank claimed the absolute title to the policies under an alleged sale and purchase of them made by it in November, 1931, under provision in the notes of C. W. Edwards; and as it had demanded of the insurer the cash surrender value and a refusal to pay was based on objections made by Mr. and Mrs. Edwards, the bank prayed for a recovery of such cash surrender value. After the death of Mr. Edwards, the bank filed a supplemental bill claiming the whole of the proceeds of the insurance policies on the ground that they were as-

signed and pledged for payment of a sum larger than said proceeds, and that having become the owner of the policies by the aforesaid sale, it was entitled to all of the proceeds. In the original and supplemental bills the complainant prayed for an attachment of "all the right, title, claim, interest, and estate which the defendants C. W. Edwards and wife, Mrs. Loraine E. Edwards, have or make to the aforesaid insurance policies." Bond being given, the attachment was levied by service of garnishment on the insurance commissioner of the state. The defendants Mr. and Mrs. Edwards had resided in the state of Arkansas since July, 1920.

After issues were made under the supplemental bill and subsequent pleadings, testimony was taken in the form of depositions of Mrs. Edwards and R. A. Lewis, the president of complainant bank. The record presents little, if any, controversy over the facts. The questions of rights arising out of these facts have been ably presented and argued.

Upon the hearing the chancellor was of opinion and decreed as follows:

(1) That the bank have a recovery against the estate of C. W. Edwards for the aggregate amount of two of the three notes sued on in this cause (the principal of all the notes being about $18,000) including interest; the same to be credited by usury therein included, to be ascertained upon a reference ordered.

(2) That the bank, by its allegations in the bill, and under the proof, is estopped to deny that at the time the original bill was filed Mr. and Mrs. Edwards had any interest in the policies of insurance, or that Mrs. Edwards now has any interest in the proceeds.

(3) That a note, numbered 5075, dated June 8, 1916, for $2,616.67, represented the only debt for which the parties intended that the policies be pledged as security; and that the bank was entitled, out of the proceeds, only to said principal sum of $2,616.67, plus interest from June 8, 1916, to March 1, 1917, the date of maturity of the note; and a further sum equal to the aggregate of premiums on said policies paid by the bank, less any dividends thereon received by it —the amount to be determined upon a reference.

(4) That the balance of the fund then remaining, and after the payment of costs, be paid over to Mrs. Loraine E. Edwards. A lien was declared thereon for fees of her counsel.

From this decree, both parties have appealed and assigned errors.

On June 8, 1916, C. W. Edwards held as the insured four policies of life insurance, issued by the Mutual Benefit Life Insurance Company, as follows: One for $2,500, dated September 21, 1905; two for $1,000 and $1,500, respectively, dated February 28, 1912; one for $3,000 dated January 23, 1914. The beneficiary named in each of these policies was Mrs. Loraine E. Edwards, his wife, if living,

otherwise the executors, administrators, or assigns of the insured. Each policy contained the following provisions:

"If not assigned, this policy may be returned to the Company at its office in Newark, New Jersey, with the insured's written request for the appropriate indorsement of the policy by the Company:

"(1) To have the beneficiary changed. This change may be made at any time and from time to time while the policy is in force, or within one month from default in premium payments."

Also the following provision:

"No assignment of this policy shall affect the Company until it shall have received written notice thereof."

None of the policies contain any provision that the insured might assign the policy without the consent of the beneficiary.

On June 8, 1916, C. W. Edwards, then a merchant and dealer in cotton, at Lexington, executed and delivered to the complainant Central State Bank two notes, numbered 5074 and 5075, respectively, for $2,616.67 each, aggregating $5,233.34, both of which were due and payable on January 1, 1917. They were executed for a loan that day for money used by the said C. W. Edwards in part for payment of past-due indebtedness to said bank, and in part for financing his mercantile business, which it is stipulated was the sole support of himself and his family, consisting of his wife, Mrs. Loraine E. Edwards, and their children. Said past-due indebtedness had been contracted for loans for the same purposes. Each of these notes was on the regular printed form, commonly used then and since then by said bank, being collateral notes having a blank space in the face of same in which collateral security pledged with such notes was described. At the time the loan was made and said notes were executed, it was agreed and understood by and between the bank and said C. W. Edwards that he would deposit and place with said bank, notes of other persons, firms, and corporations which he then had, and others expected to be received by him in said business, and also the aforesaid life insurance policies, to be held by the said bank as collateral security to secure the payment of said indebtedness, and any other indebtedness which the said C. W. Edwards might thereafter owe to said bank.

On June 17, 1916, C. W. Edwards, signing his name as William C. Edwards (conformable to the name used in the policies), and his wife, Mrs. Loraine E. Edwards, executed in writing an assignment and written transfer of said insurance policies to the complainant bank, for the purpose and consideration of the grant of credit to the said C. W. Edwards as aforesaid, and the said written transfer and assignment and the said insurance policies were delivered to the complainant bank, and thereafter notice of such assignment and transfer was given to the insurer, Mutual Benefit Life Insurance Company, to note its approval of said transfer and assignment on the same,

and this was done on July 1, 1916. This instrument of assignment and transfer is in words and figures as follows:

"Assignment of Policies

"Nos. 411256—    $2,500.00
     662457—    3,000.00
     592987—    1,000.00
     592986—    1,500.00

"In the

"Mutual Benefit Life Insurance Company of Newark, N. J.

"Life of William C. Edwards—

"For Value Received, we do hereby assign, transfer and set over unto Central State Bank—whose Post Office Address is Lexington, Henderson County, Tenn., the above-named Policy of Insurance, and all sum or sums of money, interest, benefit and advantage whatsoever, now due or hereafter to arise, or to be had or made by virtue thereof; to have and to hold unto the said Central State Bank—the said assignee hereby agreeing that in any settlement of the said Policy there shall first be deducted all then existing indebtedness to the Company on said Policy.

"In witness whereof, we have hereunto set our hands the seventeenth day of June one thousand nine hundred and sixteen, at Lexington, County of Henderson, State of Tennessee.

"Signed in the Presence of

"R. A. Lewis                    William C. Edwards
  "Lexington, Tenn.

"T. Edwards                  Loraine E. Edwards
  "Lexington, Tenn.

"Received by the Mutual Benefit
Life Ins. Co. of Newark, N. J.
"July 1—1916            W. J. A.
"J. Wm. Johnson Sec'y."

These policies thus assigned were described as collateral security in the aforesaid note numbered 5075, for $2,616.67, and attached to said note. In the printed portion of said note were the following provisions:

(1) "Do hereby authorize and empower the holders hereof for the purpose of liquidation of this note, and all interest, attorney's fees and cost thereon, to sell, transfer, and deliver the whole or any part of such security, or any additions thereto, or substitutes therefor, without any previous demand, advertisement or notice, either at broker's board or public or private sale, at any time or times thereafter, with the right on the part of such holders to become the purchaser and absolute owner thereof, free from all trust and claims. And it is further agreed that the securities hereby pledged, together with any that may be pledged hereafter shall be applicable in like manner to secure the payment or any part, or of any future obliga-

tions of the undersigned held by the holders of this obligation, and all such securities in their hands shall as one general, continuing collateral security for the whole of said obligations, so that the deficiency of any one shall be made good from the collaterals of the rest, hereby remaining responsible for any deficiency in payment, and waiving any benefit, exemption or privilege under any law now or hereafter to be in force. The drawers and endorsers severally waive presentation for payment, protest and notice of protest, and non-payment of this note.''

This note numbered 5075 was renewed from time to time for the same debt, with interest accumulations and additional loans made, the last of said renewal notes being dated July 20, 1925, for $6,798.88 due June 1, 1926. Each and all of these renewal notes, including the last one, contained the description of said insurance policies, except that by an inadvertence the wrong numbers were given in one or two of said notes, but in fact the same policies were intended to be included. The said note for $6,798.88 remains owing and wholly unpaid.

The said note numbered 5074, dated June 8, 1916, was also renewed from time to time and the said C. W. Edwards procured other loans and deposited other collateral notes and insurance policies to secure the same, until on July 20, 1925, he was indebted to said bank in the sum of $19,353.88, less certain small dividends received on said policies. The collateral security which was pledged to and deposited with said bank by C. W. Edwards to secure the payment of said indebtedness, was not sufficient in value at any time to pay all of it, and he was insolvent at all times after the beginning of these transactions. All of the said loans were made to him by the complainant bank, and the proceeds were used by him in financing his mercantile business, in buying a lot and constructing a residence thereon for the support and use of himself and family. He operated his mercantile business until about the year 1923. In September, 1922, he was qualified as trustee of Henderson county, and in July, 1925, he resigned this office and with his family immediately removed to Hot Springs, Ark., where they resided continuously. C. W. Edwards did not own any property in the state of Tennessee at the time of the maturity of his said notes. Mrs. Loraine E. Edwards did not sign any of the said notes. None of these transactions had been mentioned to her before she signed the assignment, and never at any time were they explained to her in detail. It was nine days after the execution of the notes that she executed the assignment. This occurred in the following manner: Mr. T. Edwards, a relative of Mrs. Edwards, and president of the bank at that time, went to the home of Mrs. Edwards in company with her husband, she being sick, and there in the presence of her husband she was asked by Mr. T. Edwards to sign the paper writing of assignment, which she did,

without any explanation as to its object and purpose other than the fact, as she was given to understand, that it was for the purpose of securing the bank; and she did not know whether this was for money her husband wanted to borrow or was borrowing, or for some debt that he owed. This paper writing is witnessed by R. A. Lewis and T. Edwards, and shows on its face to have been signed in their presence. Mr. Lewis was at that time the cashier of the bank. She knew nothing of the details as to her husband's obligations to the bank. She understood that she was assigning her interest in the policies to the bank, but did not know for what amounts nor how long. She testified that she supposed that the policies were being assigned to the bank to assist her husband in his financial undertakings. The complainant has at all times had possession of the policies.

On November 16, 1931, fifteen years after the date of the assignment, and after repeated renewals of the notes with added interest, and after the original notes to which the policies had been attached as collateral, had been canceled, or at least surrendered to the maker, the complainant bank, acting under the provisions contained in the note authorizing a sale of said collateral, undertook to sell said policies so pledged as collateral; and these policies were advertised and copy of the advertisements being sent to Mr. and Mrs. Edwards; the policies were sold by policy numbers, the complainant bank making separate bids thereon to the aggregate amount of $6,004.90, for which amount the policies were struck off to the bank. This was thought to be the cash surrender value of the policies at that time. Complainant bank averred in its bill that no credit was given for this amount because it was waiting to collect the actual cash surrender value of the policies before entering any credit. However, this is immaterial, for the sale was made, and the credit may be treated as entered on the notes, under the maxim that equity will treat as done that which should have been done.

The notice of advertisement and sale as certified to by the cashier of the bank, and containing the statement on oath that the bank had purchased the policies for $6,004.90, was presented by the bank to the insurance company with demand for payment of the cash surrender value, but the insurance company declined to pay the same without the consent of C. W. Edwards and his wife, which they refused to give. Thereupon, complainant filed its original bill in this cause seeking a recovery against Edwards for the amount due on said note and against the insurance company for the cash surrender value of said policies, to be credited on said recovery; but, as hereinbefore recited, C. W. Edwards died during the hearing of the cause. By reason of his death, the whole amount of the insurance became the subject of controversy.

It further appears that after the execution of the assignment by Mrs. Edwards no further or other agreement with her was made by

the bank. She had no knowledge thereafter of any of the renewals of the indebtedness.

First, is the complainant bank estopped by the allegations in its bill, and by the attachment, to claim that Mrs. Edwards became deprived of all her interest in this insurance?

In its original bill complainant alleged that the transfer and delivery of the policies to it by C. W. Edwards had the effect of depriving Mrs. Edwards of any right whatever in the policies, and to vest it with any right or claim which Mr. or Mrs. Edwards would have to them, whether Mrs. Edwards signed the notes or not; and that complainant is entitled "to have a judgment against the said C. W. Edwards for the amount of the said debt, and a judgment against the defendant Loraine E. Edwards declaring any claim, right or equity she may have ever had to the said insurance policies because of being named beneficiary therein or otherwise, forfeited, foreclosed, and forever precluded from holding or claiming the same; and for the purpose of enforcing complainant's rights and acquiring jurisdiction of the defendants C. W. Edwards and wife, Loraine E. Edwards, to make any further or other claim to said policies or any part of the proceeds thereof, complainant has a right to the writ of attachment to issue and be levied upon such equity or claim or right, and to a writ of injunction to issue forever enjoining the defendants C. W. Edwards and wife, Loraine E. Edwards, from making any claim against said insurance policies or the proceeds thereof against their co-defendant, Mutual Benefit Life Insurance Company, or this complainant on account of said policies." Such injunction was prayed for, and also it was prayed "that a writ of attachment issue and be levied by garnishment on all the right, claim, interest and estate which the defendants C. W. Edwards and wife, Mrs. Loraine E. Edwards, have or make to the aforesaid insurance policies." Further it was prayed that it be decreed that complainant was the owner of the policies and the proceeds thereof, under the assignment and the sale and purchase thereof; that the defendants had no lawful right, title, or claim thereto; and that complainant have a judgment against the insurer for the cash surrender value of the policies.

Taking these allegations together, we cannot discern an intention to recognize any right or interest in the defendants. The allegations do not show any inducement to the defendants to act upon any reasonable belief that the complainant was waiving its right or claim to the policies or their proceeds. We are not dealing with the validity of the attachment of a disputed claim; nor is this anywhere involved, for the defendants entered general appearances by filing answers. These appearances were not induced by the references to claims of the defendants but to the claim of the complainant to sole ownership. As to this claim, issue was sharply drawn by the defendants.

Nor do we think that the supplemental bill raises such estoppel

upon the complainant by its allegation: "Complainant states, as alleged in the original bill, that it has a right to the writ of attachment to be levied upon such equity, claim or right as the defendants Edward's (widow and children) have in and to said policies." The complainant in that pleading claimed elaborately that it was entitled to all of the proceeds of the policies for the satisfaction of the indebtedness. There is no basis for the inference that it intended to recognize any right or claim of said defendants to any part of the proceeds.

Second, is the complainant estopped by recitals in its original bill and supplemental bill to claim that the fund is subject to payment of more than the principal of the original note numbered 5075, with interest to the date of its maturity?

The original bill was filed for the purpose of obtaining the cash surrender value of the policies for application to the indebtedness of C. W. Edwards, as alleged. It was therein alleged that after the policies had been assigned and delivered to the complainant, C. W. Edwards failed to pay any part of the indebtedness he then owed the complainant, and, in fact, from time to time the notes evidencing said indebtedness were renewed, including interest thereon; "and additional loans were made by the complainant and other notes were executed from time to time until July, 1925, at which time the original indebtedness for which the aforesaid insurance policies were assigned to complainant, amounted to $6798.88, and on July 20, 1925, in renewal of said indebtedness the said defendant C. W. Edwards executed his promissory note," for said sum. But it was also alleged that the policies were assigned and pledged to secure the payment of any other indebtedness the said C. W. Edwards might thereafter owe to complainant for borrowed money to be used by him in his general business undertakings. In the original bill it was stated that the policies were assigned and pledged to secure the payment of the two notes for $2,616.67 each, executed on June 8, 1916, and due March 1, 1917.

Again, in an amendment to the original bill it was alleged that the policies were assigned and pledged "'to secure the payment of said indebtedness and any and all renewal notes therefor, and to secure the payment of any and all indebtedness which the said C. W. Edwards might thereafter owe to the said Bank; that the said notes so executed by the said C. W. Edwards on said date contain several of the provisions of the contract and agreement so made."

In the supplemental bill it was alleged that complainant was entitled to recover the full face value of each of the policies, and that the complainant elected to demand and sue for the same, instead of the cash surrender value of said policies as sought by it in the original bill. This was based upon the claim made that the policies were collateral security for the payment of two notes dated July 20,

1925, the one for $6,798.88 and the other for $11,314.70. Thus, the complainant in these pleadings claimed the right to all of the benefits from the policies, the moneys obtainable thereon when the pleadings were filed, respectively.

The defendant could not have been misled by these allegations. They were not caused thereby to alter their position or to suffer any injury. We do not see that there was in all of this any shifting of position on the part of the complainant otherwise than was caused by the death of the insured, which matured a full claim upon the policies. Therefore, we must conclude that the recitals relied on did not raise any estoppel upon the complainant bank.

■ ■ Third, what is the proper disposition to be made of this fund, the proceeds of these policies of life insurance?

No question can arise as to the validity of the assignment. A policy of life insurance is assignable under Code, section 7321. Scobey v. Waters, 10 Lea 551; Nashville Trust Co. v. First Nat. Bank, 123 Tenn., 617, 134 S. W., 311. A wife's interest in a policy on her husband's life may be assigned by her as security for her husband's debts. 2 Couch on Insurance, 986, citing Connecticut Mut. Life Insurance Co. v. Allen, 235 Mass., 187, 126 N. E., 367; Herr v. Reinoehl, 209 Pa. 483, 58 A., 862. Certainly, under our Married Woman's Emancipation Act, Code 1932, section 8460, she is free to make such disposition of her property interest.

■ It appears without contradiction that the policies herein involved were so assigned for security for payment of debts; and that they were pledged as such collateral security. The creditor under such assignment is entitled to receive of the benefits the amount of the debt, including the amount of any premiums which he may have paid, with interest. This is recognized in the recital in the notes that the policies were deposited as collateral security for the payment thereof. However, as in the case of Mutual Benefit Life Insurance Co. v. Swett, 6 Cir., 222 F., 200, Ann. Cas., 1917B, 298, the complainant bank might become entitled to all the proceeds if they should not be equal to the amount of the debt or debts secured by the assignment and pledge.

■ Now it is insisted that the policies were released from the pledge by the giving of new notes in payment of the old, without the consent of Mrs. Edwards, the theory being that her interest as beneficiary stood in the status of a surety. If this is true, then, of course, the bank did not become the absolute owner under its sale and purchase in 1931, for a release of the pledge would deprive it of all right in the policies.

We cannot sustain this claim of an absolute release, for the following reasons:

(a) The assignment was made to secure indebtedness to the bank; and it must be concluded that this indebtedness could be represented

by promissory notes of the insured alone. Mrs. Edwards at no time demanded a return of the policies. She only objected to the payment of the entire cash surrender value to the bank when it had sought to obtain it from the insurer.

██ (b) Note No. 5075, to which the policies were attached, was renewed for principal and interest, many times. It is true that the old notes were returned to the maker. A novation, however, is never presumed, but it must be clearly established by evidence of the discharge of the original debt by express agreement or by the acts of the parties clearly showing the intention to work a novation. Sharp v. Fly, 9 Baxt., 4; Henry v. Nubert, Tenn. Ch., 35 S. W., 444; Braly v. Ragsdale, 3 Tenn. App., 205; Gregory v. Beasley, 7 Tenn. App., 467. In Jetton v. Nichols, 8 Tenn. App., 567, it was said:

"The intention of the obligator that the existing debt should be discharged by the new obligation must be concurred in by both debtor and creditor. The point in every case then, is, did the parties intend by their arrangement to extinguish the old debt or obligation and rely entirely on the new, or did they intend to keep the old alive and merely accept the new as further security, and this question of intention must be decided from all the circumstances."

In Union National Bank v. Waters, 9 Tenn. App., 608, it was held as follows:

"At last, the question of payment and extinguishment of a note by taking a new note depends upon the intention of the parties; and where the intention is to be ascertained only from the taking of a new note and surrender of the old one (the collateral, too, being retained) it must be considered as operating only to extend the time of payment of the original debt. Griffin v. Long, 96 Ark., 268, 131 S. W., 672, 35 L. R. A. (N. S.), 855, Ann. Cas., 1912B, 622. This conclusion is strengthened by the further presumption that the creditor never intends to give up his security. Cotton v. Atlas National Bank, 145 Mass., 43, 12 N. E., 850 [supra]."

The facts and circumstances fail to show an intention by the maker and payee to extinguish the original obligation by the taking of renewal notes.

██ (c) Treating the collateral as in the status of a surety, it yet is true that at all times it was retained by the bank and was described as such in the renewal notes. This amounted to an express reservation of the right to recourse against it as security, so that it comes within the rule that a surety on a note is not discharged by the taking of a renewal note of the principal, extending the time of payment, without notice to the surety, where the extension is given under an express reservation of the right of recourse against the surety. Dies v. Wilson County Bank, 129 Tenn., 89, 94, 165 S. W., 248, Ann. Cas., 1915A, 1090, applying the provision of Code, section 7444, subsection (6), final clause.

Although the notes executed by Mr. Edwards contained the provision that the collateral should stand as security for future indebtedness contracted, the bank is bound by its allegation in the original bill that the policies were pledged as security for the original indebtedness—the two notes for $2,616.67 each. The rule is that to entitle the complainant to file a supplemental bill, and thereby to obtain the benefit of the former proceedings, it must be in respect to the same title, in the same person, as stated in the original bill. Gibson's Suits in Chancery (2 Ed.), section 684; Wing v. Champion, 1 Tenn. Ch., 517. Under the same rule the bank is estopped judicially to claim the proceeds of the policies otherwise than as purchaser at the sale of the collateral, because it based its original bill upon that title. That sale was regular, valid, and consummated, being made in the exercise of the power conferred upon it in the contract evidenced by the paper executed by Mr. Edwards. The bank became the owner of the policies as choses in action. Feliciana Bank & Trust Co. v. Union Central Life Ins. Co., 137 La., 674, 69 So., 91; Gordon v. Ware National Bank, 8 Cir., 132 F., 444, 67 L. R. A., 550. But, as against the insurance company, the bank could demand the face of the policies after the death of Mr. Edwards upon the strength of the same title upon which it demanded the cash surrender value before his death; that is, as owner by virtue of its purchase of the policies at the sale of them as collateral.

The indebtedness for which the policies were pledged was the original sum of $5,233.34 and interest, evidenced by the two notes of June 8, 1916, for $2,616.67 each. The language of these notes shows this intent, although the policies were described in and attached to only one of them. This is recognized in that part of the stipulation which is as follows:

"That the note, No. 5075, dated June 8th, 1916, and due January 1st, 1917, for $2,616.67, was signed by C. W. Edwards alone and that the four policies described in the original bill were pledged primarily for securing this note and said policies were described in said note No. 5075, and secondarily as stated in the face of the note copied in the foregoing stipulations for complainant."

We therefore cannot agree with the chancellor that the debt originally intended to be secured was only that evidenced by note No. 5075.

The record does not show that any payments were made on these obligations. It is evident that on November 16, 1931, the day of the sale, they amounted, principal and interest, to more than the fund here in controversy. In the stipulation of facts it is recited, concerning this sale: "And, in pursuance of said notice, said policies were sold at public outcry, when the defendant (complainant) Bank became the purchaser of same for the sum of $6,004.90, which was thought to be the cash surrender value of said insurance policies,

that being far less than the amount of the actual indebtedness owing to complainant secured by said policies.''

■ As the bank became the owner of the policies, it is entitled to the entire proceeds. However, it may be remarked that if the bank had received the entire proceeds of the policies, the debts for which they were originally pledged would not have been satisfied. We thus reach a conclusion which has the effect of obviating any discussion or decision whether or not the assignment of the policies operated as a change of beneficiary; nor is the bank in a position to insist upon this proposition, because in its bill it based its claim upon the sale and purchase and not upon the theory that it had been substituted as the beneficiary.

The decree of the chancery court will be modified so as to conform to these conclusions; otherwise affirmed. A decree will be entered in this court providing that out of the fund in the registry of the chancery court all the costs of this cause be first paid, and that the balance then remaining shall be paid to the complainant Central State Bank.

The cause will be remanded to the chancery court of Henderson county for such disbursement of the fund and for any other purposes deemed necessary, not inconsistent with this opinion.

Faw, P. J., and Crownover, J., concur.