IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 20, 2005

## CUMBERLAND COUNTY BANK v. DEE DOWNS EASTMAN, ET AL.

**Appeal from the Circuit Court for Cumberland County**
**No. CV004039     John A. Turnbull, Judge**

**Filed August 25, 2005**

**No. E2005-00220-COA-R3-CV**

The Cumberland County Bank ("the bank") filed an unlawful detainer action in general sessions court against Dee Downs Eastman. The bank sought to obtain possession of real property conveyed to it following the bank's foreclosure of deeds of trust securing promissory notes executed by Ms. Eastman. The general sessions court entered judgment for possession "for which a Writ of Possession may issue." Ms. Eastman appealed to the trial court and, along with the Dee Downs Eastman Revocable Trust ("the trust"), filed in that court a counterclaim that essentially challenged the validity of the foreclosure sale by which the bank acquired its title to the subject property. The trial court granted the bank summary judgment as to all issues. Ms. Eastman and the trust appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY and SHARON G. LEE, JJ., joined.

Edward M. Graves, III, Cookeville, Tennessee, for the appellants, Dee Downs Eastman, and Dee Downs Eastman Revocable Trust.

Joe M. Looney, Crossville, Tennessee, for the appellee, Cumberland County Bank.

**OPINION**

I.

On May 22, 1996, Ms. Eastman borrowed $121,010.39 from the bank and executed a promissory note ("the first note"), which was secured by a deed of trust ("the first deed of trust") on property located at 139 Lisa Lane, Fairfield Glade ("the property"). At that time, Ms. Eastman owned the property in fee simple.

As pertinent to the issues on this appeal, the first deed of trust contained an extension and renewal clause which provides as follows:

> This conveyance is to secure and make certain the payment and performance of the above-stated obligation and any and all extensions or renewals thereof in whole or in part and further to secure the performance of each and all of the covenants and agreements made herein and in said note by the grantor . . . .

(Numbering in original omitted).

The first deed of trust also contains what is commonly referred to as a "dragnet" clause:

> The Grantor agrees that this Deed of Trust shall secure the payment of any and all of his future or subsequent indebtedness owing to the beneficiary herein, of any and every kind or character, at any time within ten years from the date hereof, and in an amount not exceeding $[no amount inserted in original].

(Numbering in original omitted).

On November 2, 1996, Ms. Eastman, by a writing, created the trust. On that same date, she transferred the property by deed to the trust ("the deed to the trust"). At that time, the property was subject to the first deed of trust, which was still of record in the Register of Deeds' Office of Cumberland County. The deed to the trust was duly filed for recordation on February 27, 1997. The trust was created for the benefit of Ms. Eastman, and had two co-trustees: Ms. Eastman and her cousin, Jennifer Reiser.

On November 25, 1997, Ms. Eastman, individually, and in her capacity as co-trustee, borrowed $143,862.31 from the bank ("the second note"). The face of the second note indicates that the proceeds from the note were dispensed as follows: $120,701.37 to the bank and reflected as the "amount paid on my (loan) account"; the balance of $22,565.09 was shown as "amount given to me directly." The amount paid directly to Ms. Eastman – $22,565.09 – was secured by a new deed of trust ("the second deed of trust"). The second note was only signed by Ms. Eastman; her co-trustee – Ms. Reiser – did not sign any of the relevant documents. Ms. Eastman actually signed the second note twice: once individually and again as a trustee of the trust.

Ms. Eastman ultimately defaulted on her obligation to the bank. Subsequently, the bank accelerated the balance due under the notes and instituted foreclosure proceedings against Ms. Eastman. On February 26, 2003, the bank held a foreclosure sale. A trustee's deed ("the trustee's deed") conveying the property to the bank was executed and recorded on February 28, 2003. When Ms. Eastman refused to vacate the property, the bank filed a detainer warrant in the court of general

sessions on July 31, 2003. A judgment restoring possession to the bank was entered on November 19, 2003. By notice filed November 26, 2003, Ms. Eastman appealed to the circuit court.

On January 20, 2004, Ms. Eastman and the trust filed an answer to the bank's detainer warrant. They also filed a counterclaim in which they sought a declaratory judgment and other relief. They alleged that the trustee's deed "is of no legal effect" and that the trust was the lawful owner of the property; that the second deed of trust was void because it lacked the signature of the co-trustee; and that the first note was discharged along with the first deed of trust. They also sought a judgment of ejectment against the bank.

On October 20, 2004, the bank moved for summary judgment on the ground that the foreclosure was valid, and therefore, it was entitled to possession of the property, a deficiency judgment for the difference in the amount owed at the time of foreclosure and the amount received as a result of the foreclosure, and other damages. A statement of undisputed facts was included with its motion. Ms. Eastman responded individually by filing a "Response to Motion for Summary Judgment; Request for Dismissal," in which she averred that she no longer had the power to transfer any property when she executed the second note since the title was no longer hers. Ms. Eastman, however, did not respond to the bank's statement of undisputed facts in her motion, nor did she include her own statement of facts or any exhibits.

Following oral argument, the trial court, by order entered December 1, 2004, granted the bank's motion for summary judgment. The court held that all of the indebtedness owed by Ms. Eastman was fully secured by the first deed of trust and, accordingly, the foreclosure of that first deed of trust was proper. The court reserved judgment on "[a]ll other issues," including the deficiency judgment and other damages sought by the bank.

On December 14, 2004 – subsequent to the trial court's order – both Ms. Eastman and the trust filed a "Motion to Alter or Amend Summary Judgment Order, Response to Motion for Summary Judgment, and Cross-Motion for Summary Judgment" with an accompanying memorandum of law. At the same time, they also filed (1) a response to the bank's statement of "material" facts; (2) their own statement of "material" facts; (3) an affidavit from Ms. Eastman; and (4) accompanying exhibits, which included a page from Ms. Eastman's credit report indicating that the account attached to the first note was closed.

By subsequent order entered December 20, 2004, the trial court denied the motion brought by Ms. Eastman and the trust. Upon request for findings of fact, the trial court stated the following:

> [T]he Court finds that based upon the language contained in the Trust Instrument, specifically Paragraph 2.1 of the Trust[1], [Ms. Eastman],

---

[1]Paragraph 2.1 of the trust agreement provides that "[i]n creating this Trust, the Trustor intends that all the property which is transferred to this Trust, and the proceeds thereon shall remain the separate property of the Trustor during her lifetime."

as settlor, retained the legal and beneficial title to the real property in question.

The Court further finds and determines that the first Deed of Trust executed on May 22, 1996, by [Ms. Eastman] secured all of the indebtedness incurred by [Ms. Eastman] to [the bank] under both Promissory Notes, based upon both the provisions of Paragraph No. 2 of the Deed of Trust, commonly referred to as the dragnet clause, and the provisions of the Deed of Trust which provided that the Deed of Trust secured extensions and renewals of said Note.

The Court further finds that there is no genuine issue of any material fact and that the [bank] is entitled to a judgment on the issues raised in its Summary Judgment as a matter of law.

The final order in this matter was entered on January 21, 2005. By agreement of the parties, the bank was granted a judgment against Ms. Eastman for $38,000. The parties further agreed that costs would be assessed to the bank. From this order, the defendants appeal.[2]

## II.

The defendants challenge the trial court's grant of summary judgment to the bank on the ground that the foreclosure sale was invalid. Accordingly, they argue that not only should the court have denied the bank's motion for summary judgment, but it should have granted the defendants' motion for summary judgment.

First, the defendants argue that the second note operated as a novation, thereby extinguishing the first note and the first deed of trust. Therefore, so the argument goes, the dragnet clause in the first deed of trust is not effective to secure the payment of the second note. As to the second note, they argue that since the co-trustee did not sign it, and the trust held title to the property by virtue of the deed to the trust, the second deed of trust was invalid. Accordingly, the bank had no ground upon which to foreclose. Lastly, they contend that the trial court erred in granting summary judgment without having the co-trustee, Ms. Reiser, before the court.

The critical issue in this case is whether the second note is subject to the dragnet clause in the first deed of trust. As discussed in detail in this opinion, we hold that it is.

## III.

In determining whether summary judgment is appropriate, a court must determine "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

_____

[2]The defendants actually filed their notice of appeal on January 18, 2005.

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. In reviewing the evidence before it, the trial court is to "take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." **Byrd v. Hall**, 847 S.W.2d 208, 210-11 (Tenn. 1993). However, summary judgment should be granted "when both the facts and the conclusions to be drawn from the facts permit a reasonable person to reach only one conclusion." **Carvell v. Bottoms**, 900 S.W.2d 23, 26 (Tenn. 1995). Since a motion for summary judgment presents a pure question of law, we review the trial court's judgment *de novo*, according no presumption of correctness to the judgment below. **Gonzales v. Alman Const. Co.**, 857 S.W.2d 42, 44-45 (Tenn. Ct. App. 1993).

IV.

A.

In addressing the critical issue in this case, our approach is twofold. First, we must determine whether the second note operated as a novation, thereby extinguishing the first note and rendering the provisions of the first deed of trust ineffective as to the second note; or whether the second note was a renewal of the first note. Second, if we find that the second note was a renewal note, and not a novation, we must then determine if the dragnet clause in the first deed of trust secures all of Ms. Eastman's indebtedness to the bank.

"A novation is the substitution of a new obligation for an old." **Burchell Ins. Servs., Inc. v. Western Sizzlin Steakhouse of Dyersburg**, No. E2003-01001-COA-R3-CV, 2004 WL 1459398, at *3 (Tenn. Ct. App. E.S., filed June 29, 2004). Therefore, a novation will discharge an original note. A novation will be found where the following essentials exist: (1) a previous valid obligation; (2) an agreement supported by evidence of intention; (3) extinguishment of the old contract; and (4) a valid new contract. **Id.** (citations omitted). A novation is never presumed. **Central State Bank v. Edwards**, 111 S.W.2d 873, 880 (Tenn. Ct. App. 1937). Rather, the defendant bears the burden of demonstrating that a novation is "clearly established by evidence of the discharge of the original debt by express agreement or the acts of the parties clearly showing the intention to work a novation." **Bank of Crockett v. Cullipher**, 752 S.W.2d 84, 89 (Tenn. Ct. App. 1988) (quoting 20 Tenn. Juris., *Novation* § 3 (1985)). The novation need not be shown by express words, as the evidence supporting intent may be implied from the facts and circumstances attending the transaction and the parties' subsequent conduct. **In re Edward M. Johnson & Assoc.**, 61 B.R. 801, 806 (Bankr. E.D. Tenn. 1986).

A renewal note, on the other hand, *does not* discharge the debt unless all of the parties agree that a renewal is to have such effect. **Commerce Union Bank v. Burger-In-A-Pouch, Inc.**, 657 S.W.2d 88, 90 (Tenn. 1983). Therefore, the determination of whether the second note constituted a novation or a renewal of the first note hinges on the parties' intent. Otherwise stated, our primary inquiry is

did the parties intend by their arrangement to extinguish the old debt or obligation and rely entirely on the new, or did they intend to keep the old alive and merely accept the new as further security.

*Central State Bank*, 111 S.W.2d at 880 (quoting *Jetton v. Nichols*, 8 Tenn. App. 567 (1928)).

B.

From the facts before us, we conclude that the parties did not intend the second note to operate as a novation. It is true, as the defendants argue, that some of the requisite elements for a novation are satisfied – the first note was a previously valid obligation, and the second note was valid as to Ms. Eastman in her individual capacity. *See* **Burchell Ins. Servs., Inc.**, 2004 WL 1459398, at *3. However, there are absolutely no facts before us reflecting an agreement supported by evidence of intention. **Id.**

The second note was for the amount of $143,862.31. It appears from the face of the note that of that amount, $120,701.37 was paid to Ms. Eastman's loan account, and $22,565.09 was paid to her directly. When the parties executed the second note, it was secured by both the first and second deeds of trust, and it was signed by Ms. Eastman individually and in her capacity as co-trustee. The bank never marked the first note paid; it was never returned to Ms. Eastman. There are no facts before us showing directly or by reasonable inference that the execution of the second note was intended by the parties as a novation. *See* **In re Edward M. Johnson & Assoc.**, 61 B.R. at 806.

As previously noted, the defendants did not respond to the bank's motion for summary judgment and its statement of undisputed facts until *after* the trial court had granted the bank's motion. These filings came too late. *See* Tenn. R. Civ. P. 56.03, 56.04. *See also* **Harris v. Chern**, 33 S.W.3d 741 (Tenn. 2000). However, even if the defendants' filings are considered, they do not raise genuine issues of material fact.

In arguing that the parties did, in fact, intend the second note to operate as a novation, the defendants point to an entry in Ms. Eastman's credit report, which was submitted in support of their motion to alter or amend. The entry, which appears to pertain to the first note, bears the notation "PAID ACCOUNT/ZERO BALANCE; CLOSED ACCOUNT." (Capitalization in original). Therefore, so the argument goes, the closed account reflects that the second note extinguished the first note. This exhibit is a one-page document excerpted from Ms. Eastman's credit report. The exhibit contains a series of codes, the meaning of which are not stated. There is nothing about this report by a *third party* reflecting that Ms. Eastman and the bank entered into an agreement that the second note would be a novation, one that would extinguish the first note and the first deed of trust. Simply stated, the credit report is no evidence of a novation.

In further support of their argument, the defendants reference Ms. Eastman's affidavit, in which she states

> [i]t was my intention that [the second note] act as a novation and extinguishment of [the first note], and it was my understanding based upon [the bank's] representations to me that [the bank] intended there to be a novation and extinguishment of [the first note] upon my executing [the second note]. In fact, [the bank] notified me that [the first note] was paid and had a zero balance.

The affidavit reflects Ms. Eastman's "intention" with respect to the execution of the second note and "[her] understanding" of the bank's intention. All of this is one-sided; none of it proves directly or by reasonable inference that there was an *agreement* between the parties that the second note would operate as a novation. "[B]oth the facts and the conclusions to be drawn from the facts permit a reasonable person to reach only one conclusion," *i.e.,* that the bank intended the second note to operate as a renewal. *Carvell*, 900 S.W.2d at 26.

The first deed of trust provides that

> [t]his conveyance is to secure and make certain the payment and performance of the above-stated obligation and *any and all extensions or renewals thereof in whole or in part* and further to secure the performance of each and all of the covenants and agreements made herein and in said note by the grantor . . . .

(Numbering in original omitted) (emphasis added). By this language, the first deed of trust secures the payment of the second note, which was a renewal of the first note.

V.

As we have determined that the second note was merely a renewal of the first such that the provisions of the first deed of trust apply to the second note, we must now determine if the dragnet clause contained in the first deed of trust is valid.

A dragnet clause is a provision which, on its face, secures both the specific debt secured by that deed of trust, and all present and future indebtedness of the borrower to the lender. *In re Lemka*, 201 B.R. 765, 767 n.2 (Bankr. E.D. Tenn. 1996). Tennessee courts have consistently recognized the validity of these provisions. *See In re Willie*, 157 B.R. 623, 626 (Bankr. M.D. Tenn. 1993); *Rogers v. First Tennessee Bank Nat'l Assoc.*, 738 S.W.2d 635, 636-37 (Tenn. Ct. App. 1987). Further, their legality has been codified by our legislature. *See* Tenn. Code Ann. § 47-50-

112(b) (2001).[3]  Therefore, if the language of the dragnet clause is plain and unambiguous, it must be enforced according to its terms, and those terms "must be construed according to sense and meaning of terms used by the parties, and if such terms are clear and unambiguous, they must be taken and understood in their plain, ordinary and popular sense." ***Home Fed. Bank, FSB, of Middlesboro, Kentucky v. First Nat'l Bank of Lafollette, Tennessee***, 110 S.W.3d 433, 437 (Tenn. Ct. App. 2002) (quoting ***Johnson v. Midland Bank and Trust Co.***, 715 S.W.2d 607, 611 (Tenn. Ct. App. 1986)).

The dragnet clause contained in the first deed of trust provides as follows:

> The Grantor agrees that this Deed of Trust shall secure the payment of any and all of his future or subsequent indebtedness owing to the beneficiary herein, of any and every kind or character, at any time within ten years from the date hereof, and in an amount not exceeding $[no amount inserted in original].

(Numbering in original omitted).

The defendants do not challenge the validity of this clause.  Rather, they contend that it should not be used to secure the indebtedness evidenced by the second note because the second note came into existence after the property was transferred.  Therefore, so the argument goes, the trust was not on notice of any indebtedness acquired after the property transfer.  In support of their argument, the defendants cite case law for the proposition that a dragnet clause is unenforceable when a subsequent note is executed without the consent of the party who owns the land used to secure that debt. ***In re Lemka***, 201 B.R. at 767, 769.  They also cite a case from another jurisdiction where a court held that a grantee of a deed of trust could not be held liable for indebtedness which arose after the sale of the relevant property. ***Vaughan v. Crown Plumbing & Sewer Serv., Inc.***, 523 S.W.2d 72, 77 (Tex. Civ. App. 1975).

---

[3]Tenn. Code Ann. § 47-50-112(b) provides as follows:

> Any contract, security agreement, note, deed of trust, or other security instrument, in writing and signed or endorsed by the party to be bound, that provides that the security interest granted therein also secures other provisions or future indebtedness, regardless of the class of other indebtedness, be it unsecured, commercial, credit card, or consumer indebtedness, shall be deemed to evidence the true intentions of the parties, and shall be enforced as written; provided, that nothing herein shall limit the right of any party to contest the agreement on the basis that it was procured by fraud or limit the right of any party to assert any other rights or defense provided by common law or statutory law in regard to contracts.

We find, however, that both of these cases are inapposite to the matter before us. The defendants' reliance on these cases requires that we view Ms. Eastman as a separate entity from the trust such that the trust cannot be charged with notice or with consenting to the execution of the second note. Since we decline to treat the defendants in this way, we find that Ms. Eastman cannot evade responsibility for the debt owed by attempting to separate herself from the trust.

Since the provisions of the first deed of trust apply to any renewals of the first note, and we find that the second note was, in fact, a renewal of the first note and not a novation, the dragnet clause in the first deed of trust secured the payment of the second note. Accordingly, when the note was not paid, the bank properly instituted foreclosure proceedings.

## VI.

Lastly, the defendants argue that the trial court erred in granting summary judgment without having the trust's other trustee – Jennifer Reiser – before the court. We find no error in the trial court's disposition of this case by way of summary judgment in the absence of Ms. Reiser.

The critical issue in this case was the bank's right to foreclose on its deeds of trust with respect to the two obligations admittedly signed by Ms. Eastman. The facts material to the bank's right to foreclose were not in dispute. Those facts conclusively show that the bank had the right to foreclose.

The money judgment against Ms. Eastman was entered pursuant to the agreement of Ms. Eastman and the bank. A money judgment was not entered against the trust.

The first deed of trust establishes that the bank was the owner of an encumbrance on the property *at the time* of the purported conveyance to the trust. Even assuming the deed to the trust is valid, that deed was delivered subject to the duly-recorded first deed of trust. Furthermore, the trust was a party to this action by way of the counterclaim that it filed jointly with Ms. Eastman. Ms. Resier herself was not a necessary party with respect to the relief granted by the trial court. *If* the trust and/or Ms. Reiser has a cause of action, it is against Ms. Eastman. Neither has a cause of action against the bank growing out of the facts of this case.

## VII.

We hereby affirm the judgment of the trial court granting summary judgment to the bank. Accordingly, we remand this matter to the court below for the enforcement of its judgment and the collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed to the appellant, Dee Downs Eastman.

_____
CHARLES D. SUSANO, JR., JUDGE