**In re William J. O'BRIEN, Debtor.**

**GREAT AMERICAN INSURANCE COMPANY, Plaintiff,**

v.

**William J. O'BRIEN, Defendant.**

**Bankruptcy No. 92–26634–D.
Adv. No. 92–0830.**

United States Bankruptcy Court,
W.D. Tennessee, W.D.

May 12, 1993.

Scott A. Frick, Memphis, TN, for plaintiff.

Patrick Johnson, Jr., Memphis, TN, for defendant.

### AMENDED MEMORANDUM OPINION AND ORDER

BERNICE BOWIE DONALD, Bankruptcy Judge.

This cause came on to be heard on the cross-motions of the Plaintiff, Great American Insurance Company, and debtor for summary judgment on Great American's adversary complaint, seeking dischargeability of its debt.

The issue before the court is whether upon consideration of the complaint, answer, and any supporting affidavits there exists "no genuine issue as to any material fact" such that the plaintiff is entitled to judgment as a matter of law pursuant to F.R.Civ.P. 56(c) made applicable to proceedings in bankruptcy by F.R.B.P. 7056. The following shall constitute the courts findings of fact and conclusions of law pursuant to F.R.B.P. 7052. This is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2)(I). The court has jurisdiction by virtue of 28 U.S.C. §§ 157 and 1334.

## BACKGROUND FACTS

This adversary proceeding arises out of certain acts committed by the Debtor while in the employ of the Middle–East Tennessee Chapter of the Arthritis Foundation. During the pertinent time period in question, the Debtor was employed as a Development Specialist with the Arthritis Foundation. In his capacity as Development Specialist, the Debtor was responsible for determining when donations made to the Arthritis Foundation offices located throughout middle and east Tennessee reached a certain level requiring that funds be transferred to the main chapter account in Nashville, Tennessee for eventual transfer to the national office located in Atlanta, Georgia.

While employed with the Arthritis Foundation, the Debtor established a bank account with First American Bank in Nashville under the name of "Arthritis Fund, Account No. 1246227." This account was not authorized by the Arthritis Foundation, and moreover, was established by William J. O'Brien as the sole signatory on the account. Between April 1988, and January, 1989, the Debtor deposited donation checks intended for the Arthritis Foundation into the unauthorized account. The Debtor would then write checks to various entities to which the Debtor personally owed money, and otherwise converted the funds for his own use.

The losses incurred by the Arthritis Foundation as a result of the Debtor's actions was discovered in January, 1989, and upon investigation, it was determined that $35,836.56 was deposited into the unauthorized account. Of this amount, only $500.00 constituted funds belonging to the Debtor. After discovery of the Debtor's

actions, the Arthritis Foundation was successful in reclaiming $7,729.61 of the funds in the account. As a result of the Debtor's unauthorized actions, the Arthritis Foundation incurred losses in the amount of $27,606.95 [1].

During the relevant time period in question, the Arthritis Foundation had in effect an Employee Dishonesty Bond issued by Great American Insurance Company. This bond was designated Bond No. 279 48 95 and provided coverage for losses sustained by the Arthritis Foundation as the result of certain dishonest acts committed by its employees.[2] A Proof of Loss was ultimately submitted by the Arthritis Foundation making claims for the loss sustained by the Arthritis Foundation as a result of the actions committed by the Debtor.[3]

After investigation of the claim by Great American Insurance Company, it was determined that the Debtor had converted for his own use $27,606.95 of funds which were the property of the Arthritis Foundation. Pursuant to its obligations under the bond, Great American Insurance Company paid $26,606.95 to the Arthritis Foundation. This payment covered the losses sustained by the Arthritis Foundation with the exception of the $1,000.00 deductible on the policy. As part of the consideration for this payment, the Arthritis Foundation executed a Release and Assignment of its causes of action against William J. O'Brien to the Great American Insurance Company.[4]

Great American Insurance Company contacted the Debtor concerning reimbursement of losses sustained by Great American Insurance Company on the bond. Subsequently, the Debtor executed a promissory note in the amount of $26,606.95 in favor of the Great American Insurance Company.[5]

---

1. See the Affidavit of Firman W. Beckwith, (Exhibit "A").

2. See Affidavit of Gregory W. Stires. (Exhibit "B") and copy of the Employee Dishonesty Bond attached to the Affidavit of Gregory W. Stires.

3. See Proof of Loss attached to the Affidavit of Firman W. Beckwith.

4. A copy of this Release and Assignment is attached to the Affidavit of Gregory W. Stires.

5. See copy of this promissory note is attached to the Affidavit of Gregory W. Stires.

Criminal charges were brought against the Debtor by the State of Tennessee for larceny and various other crimes, and the Debtor entered a plea of guilty to the offense of grand larceny over $500.00.[6]

The Debtor began making payments on the promissory note commencing December 1, 1990 and made payment through August 1, 1991. The Debtor then sought relief under the Bankruptcy code by filing a petition in bankruptcy on June 22, 1992. Great American Insurance Company then filed the instant adversary proceeding seeking a determination from this Court that the debt owed by the Debtor to Great American Insurance Company is nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

### DISCUSSION

The uncontroverted evidence before the Court including, inter alia, the debtor's guilty plea, demonstrates that the Debtor committed fraud and embezzlement while acting in a fiduciary capacity during his employment as a Development Specialist with the Arthritis Foundation. Separate and apart from any fraud or defalcation committed while acting in a fiduciary capacity, the uncontroverted evidence before the Court also demonstrates that the Debtor committed larceny by stealing funds consisting of donations to the Arthritis Foundation, which the Debtor converted by depositing those funds in an unauthorized bank account to which the Debtor was the sole signatory. These facts, as outlined in the Affidavit of Firmen W. Beckwith, are uncontroverted by the Debtor. Moreover, the debtor, in his answer to the complaint filed by the Great American Insurance Company admits in Paragraph C of the Sixth Defense that he was guilty of theft. Further, the Debtor plead guilty to larceny charges brought against him by the State of Tennessee.

In the *Matter of Rose*, 934 F.2d 901 (7th Cir.1991), the Seventh Circuit Court of Appeals addressed the issue of whether certain acts committed by the debtor constitut-

ed larceny as defined by 11 U.S.C. § 523(a)(4) when the debtor took money belong to the debtor's former spouse. In defining what constitutes larceny for 11 U.S.C. § 523(a)(4) purposes, the Court stated as follows:

> Larceny is proven for § 523(a)(4) purposes if the debtor has wrongfully and with fraudulent intent taken property from its owner. (citations omitted)

*Matter of Rose* at page 903.

After making the determination that the property taken by the debtor was, in fact, the property of the creditor, the Court held that the debtor had committed larceny and that the debt was non-dischargeable, based on the clear language of 11 U.S.C. § 523(a)(4).

The case law construing 11 U.S.C. § 523(a)(4), is clear in holding that when a Debtor seeks to discharge a debt which was incurred through larceny, the debt incurred through the underlying larcenist acts is not dischargeable even absent the existence of a fiduciary relationship between the debtor and the creditor. See e.g., *In re Cooper*, 125 B.R. 777 (Bankr. N.D.Ill.1991) When the basis for non-dischargeability under section 523(a)(4) is embezzlement or larceny, there is no requirement that the debtor acted in a fiduciary capacity. *Accord, In re Balzano*, 127 B.R. 524 (Bankr.E.D.N.Y.1991), *In re Littleton*, 942 F.2d 551 (9th Cir.1991)

In the case of *Funventures In Travel v. Dunn*, 39 B.R. 249 (E.D.Pa.1984), the District Court for the Eastern District of Pennsylvania addressed the issue as to whether or not the existence of a fiduciary relationship is required to be proven if the debt incurred arose as the result of embezzlement or larceny committed by the debtor. In ruling on this issue, the court stated as follows:

> Debtor's final argument is that he and plaintiff corporation were partners in the travel business and therefore he was not in a fiduciary relationship with plaintiff.

---

**6.** A certified copy of the court records concerning the criminal charges and the guilty plea entered by the Debtor to the charges has been filed with the Clerk of this Court, and a copy was introduced as Exhibit "C."

Even if the court was to accept debtor's argument, the debt owed by debtor to plaintiff is still not dischargeable. The statute provides that a debt is not dischargeable if it arises from "... fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny ..." The phrase "while acting in a fiduciary capacity" does not modify the words "embezzlement or larceny." See *In re Crook*, 13 B.R. 794, 798 (Bankr.D.Me. 1981); *In re Gumieny*, 8 B.R. 602, 605 (Bankr.E.D.Wis.1981). Thus, even assuming debtor was not acting in a fiduciary capacity, the debt would still not be dischargeable if the debt arose as a result of "embezzlement or larceny."

*Funventures* at page 251.

Chief Judge Paine reached a similar conclusion in the case of *In re Sutton*, 39 B.R. 390, 395 (Bankr.M.D.Tenn.1984).

In the instant case, the uncontroverted facts demonstrate that the Debtor committed acts of larceny while employed as a Development Specialist with the Arthritis Foundation. Debtor plead guilty to these acts. These acts of larceny gave rise to the debt assigned to the Great American Insurance Company by the Arthritis Foundation. Pursuant to 11 U.S.C. § 523(a)(4), a debt for larceny is not dischargeable under the general discharge provisions of 11 U.S.C. § 727. There is no genuine dispute as to the question of larceny.

■ This precise defense raised by this debtor was raised by the debtor in *Funventures In Travel v. Dunn*. In *Funventures*, the debtor embezzled certain commissions which were due Funventures. The creditor discovered the debtor's dishonest acts and when the debtor was confronted, the debtor executed an acknowledgment of the debt and made an initial payment of $1,000 to the creditor. In addition, the debtor in *Funventures*, as in the instant case, was convicted of criminal charges for his wrongdoings.

In defending the nondischargeability action brought by Funventures, the debtor claimed that his subsequent acknowledgment of the debt negated any bad faith or fraudulent intent. In disposing of this argument, the District Court stated as follows:

> Debtor's second argument is that despite his "... defalcation, misappropriation or embezzlement of funds in a fiduciary capacity ..." his subsequent acknowledgment of the debt negates any showing of bad faith or fraudulent intent, a showing required under 11 U.S.C. § 523(a)(4). This argument must be rejected. In order for the court to accept this argument the court would have to ignore the plain wording of the statute, as well as, case law on the subject. It is clear that when, as in this case, a person obtains funds through conduct set forth in the statute, an underlying debt which arises as a result of that conduct is not made dischargeable by an acknowledging of the debt signed by the debtor prior to the debtor filing a bankruptcy petition. See *Greenberg v. Schools*, 711 F.2d 152 (11th Cir.1983); *Arnold v. Employers Insurance of Wausau*, 465 F.2d 354 (10th Cir. 1972).

*Funventures* at page 251.

In the case at bar, to accept the Debtor's defense that the execution of the promissory note negates any wrongdoing by the Debtor and creates a novation defeats the entire purpose behind 11 U.S.C. § 523(a)(4) and would make a mockery of the section. As the *Funventures* Court held, it is the acts which give rise to the underlying debt which must be examined in order to determine whether or not a debt becomes nondischargeable pursuant to 11 U.S.C. § 523(a)(4). To validate the Debtor's defense would be tantamount to the issuance of a license to steal since all a debtor would be required to do in order to escape financial responsibility for larceny or embezzlement would be to sign a promissory note upon being confronted with the evidence of the crime, followed by the filing of a bankruptcy petition and the payment of a filing fee. This would undermine congressional intent to give relief to "honest and unfortunate" debtors by providing a veritable haven for criminals. The validation of such a defense counters the specific intent of Congress in drafting the bankruptcy code since

"[t]he bankruptcy laws are not a haven for criminal offenders, but are designed to give relief from financial over-extension" (H.R.Report No. 595, 9th Congress, 2nd Sess. 342, reprinted in 1978 *U.S.Code Cong. & Admin.News* 5787, 5963, 6299).

Debtor contends that when the Promissory Note was executed by him, the Promissory Note was substituted for any cause of action which Plaintiff may have had against the Debtor. In essence, Debtor contends that a novation occurred. A novation constitutes a new contractual relationship based upon a new contract by all the parties interested. 20 Tenn.Juris., Novation § 1. The elements of a novation are essentially the same as in the original complaint and include legal subject matter, competent parties, meeting of the minds, and sufficient consideration. *In re Edward M. Johnson & Associates, Inc.*, 61 B.R. 801 (Bankr.E.D.Tenn.1986).

A contract of novation may be effected in three ways: (1) By the substitution of a new obligation between the same parties with intent to extinguish the old obligations; (2) by the substitution of a new obligor in place of the old one, with intent to release the latter; and (3) by the substitution of a new obligee in place of the old one, with intent to transfer the rights of the latter to the former. (*In re Edward M. Johnson & Assocs.*), supra.

In order to effect a novation there must be a clear and definite intention on the part of all interested parties to create a novation. *Bank of Crockett v. Cullipher*, 752 S.W.2d 84 (Tenn.Ct.App.1988).

The burden of proof as to a novation rests with the party asserting the novation. *In re Edward Johnson*, supra. *Central State Bank v. Edwards*, 21 Tenn. App. 418, 111 S.W.2d 873 (1937).

The court finds that the Arthritis Foundation made a claim upon its bond for the loss suffered as a result of debtor's criminal acts. Pursuant to its obligation under the bond, Great American paid the sums owed the Arthritis Foundation. As contribution for payment, the Arthritis Foundation executed a "Release and As-signment" of its causes of action against debtor arising from debtors acts of embezzlement and larceny. Subsequently, debtor entered into and executed a promissory note for payment of the underlying obligation.

Debtor relies on the case of *Maryland Casualty v. Cushing*, 171 F.2d 257 (7th Cir.1949) which holds simply that when a Note is expressly given and taken in waiver of, or satisfactory of, or in substitution of an antecedent tort action, there is a new debt which, unlike the original tort action for larceny or fraud, is dischargeable. The court finds the debtor's reliance misplaced.

*Maryland Casualty* is factually distinguishable from the case at bar. In *Maryland*, there was an express waiver of the tort action based on execution of the note. There is no such waiver within the four corners of the Release and Assignment in the instant case. Such waiver may not be presumed. See, *In re Edward Johnson*, supra. Further, the court observes that the general rule is that an assignment is not a novation because it is not a new contract, but rather an executed transaction. Calamari & Perillo, Contracts § 345 (West 1979).

Thus, the Debtor failed to show that the essential elements of a novation occurred upon debtor's execution of the note.

## CONCLUSION

Based upon the complaint and answer filed in the instant adversary proceeding, the affidavits and accompanying exhibits, arguments of counsel, relevant case and statutory authority, and upon the entire case record as a whole, the court finds that no genuine issue exists as to any material fact. Based on the foregoing discussion, summary judgment is appropriate and is granted in favor of the Plaintiff, Great American Insurance Co., determining its debt to be nondischargeable under 11 U.S.C. § 523(a)(4) based on debtor's larcenous acts. Debtor's motion for summary judgment is denied.

■ Based on the amended opinion of *In re McLaren*, 990 F.2d 850 (6th Cir.1993), the existence and validity of a debt is a core proceeding.

The plaintiff is ordered to submit within 15 days of the date of this order, an order for the Court's signature which includes a judgment in the amount of $27,606.95 plus interest.

**IT IS SO ORDERED.**