In re Pamela A. WEST, Debtor.

John R. OLTMAN, Plaintiff/Appellant,

v.

Pamela A. WEST, Defendant/Appellee.

No. 93 C 3505.

United States District Court,
N.D. Illinois, E.D.

Aug. 11, 1993.

---

Joel A. Schechter, Grossman, Mitzenmacher & Schechter, Chicago, IL, for plaintiff.

Harold Rosen, Jeffery A. Schulman, Wolin & Rosen, Chicago, IL, for defendant.

## *MEMORANDUM OPINION AND ORDER*

CONLON, District Judge.

Plaintiff/appellant John R. Oltman ("Oltman") appeals a bankruptcy court decision pursuant to Bankruptcy Rule 8001(a), granting judgment on the pleadings against Oltman.

### *BACKGROUND*

Oltman hired defendant/appellee Pamela A. West ("West") to work as a bookkeeper in October 1986 at a salary of $150 per month. West's responsibilities included au-

thority to sign Oltman's checks to pay bills on his behalf. From December 1986 to October 1991, West performed her duties as bookkeeper. She also used more than $100,000.00 of Oltman's checks to pay her own personal bills. When Oltman discovered West's unauthorized payments, he fired her and demanded restitution of the misappropriated funds. On December 31, 1991, West executed a promissory note ("the note") in which she promised to pay Oltman $75,000 plus interest over fifteen years. In consideration for the note, Oltman executed a general release and covenant not to sue ("the release"). West was thereby released from all Oltman's claims except for West's obligations under the note. Specifically, the release provided:

FOR AND IN CONSIDERATION of the contemporaneous execution and delivery by PAMELA ANN WEST ("WEST") to JOHN R. OLTMAN ("OLTMAN") of a certain Promissory Note in the principle [sic] amount of Seventy–Five Thousand ($75,000.00) Dollars, payable to the order of OLTMAN in installments ("THE NOTE"), OLTMAN agrees, covenants, undertakes and binds himself as follows:

1. OLTMAN shall and does hereby remise, release and forever discharge ... WEST ... from and against all manner of actions, complaints, causes of action, claims, suits, debts, breaches, sums of money, accounts, reckonings, contracts, torts, controversies, agreements, promises, damages, executions, claims and demands, whatsoever, in law or in equity, arising out of, directly or indirectly, any matter, transaction, representation, event or thing from the first day of time to and including the date hereof; provided, however, specifically excepted and excluded from the foregoing General Release by OLTMAN is the obligation of WEST as the maker of THE NOTE.

2. In addition to the foregoing General Release by OLTMAN ..., OLTMAN ... does hereby further covenant not to sue WEST ... upon any matter within the stated scope of said General Release; and, OLTMAN shall not and will not bring, commence, prosecute, maintain or cause or permit to be brought, commenced, prosecuted or maintained ... any suit, claim, action or charge against WEST ... upon or related to any cause of action, claim, suit, debt, breach, sum of money, account, reckoning, contract, tort, controversy, agreement, promise, damage, liability, claim or demand, whatsoever, arising out of, directly or indirectly, any matter, transaction, representation, event or thing from the first day of time to and including the date hereof; provided, however, specifically excepted and excluded from the foregoing covenant by OLTMAN is the obligation of WEST as maker of THE NOTE.

3. OLTMAN acknowledges that execution and delivery of THE NOTE by WEST has been undertaken by her solely for the purpose of compromise, settlement and expeditious resolution of controversies with OLTMAN and THE NOTE represents a complete accord, satisfaction, settlement and comprehensive resolution of all controversies between OLTMAN and WEST.... OLTMAN agrees that all of the terms of this General Release and Covenant Not To Sue shall be in all respects effective and binding and not subject to termination or recision [sic].... OLTMAN acknowledges receipt and sufficiency of THE NOTE and the adequacy of consideration for this General Release and Covenant Not To Sue; and, OLTMAN covenants not to challenge any of the same.

West filed for personal bankruptcy under Chapter 7 of the Code on October 13, 1992. She listed the note payable to Oltman as an unsecured debt. On January 22, 1993, Oltman filed an adversary complaint to determine the dischargeability of West's debt. On March 12, 1993, West filed a Bankruptcy Rule 7012(c) motion for judgment on the pleadings based on the release. On May 14, 1993, the bankruptcy court granted West's motion. 153 B.R. 821. Oltman now appeals this decision.

## DISCUSSION

The legal conclusions of the bankruptcy court are reviewed *de novo* and

factual findings are reviewed under a clearly erroneous standard. Bankruptcy Rule 8013; *In the Matter of Newman*, 903 F.2d 1150, 1152 (7th Cir.1990). Oltman did not challenge the validity of the note or release in the bankruptcy court, and that court did not look beyond the language of the agreements. Oltman now contends that the bankruptcy court's decision precludes him from presenting evidence about the circumstances surrounding the execution of the note and release. This factual challenge comes too late. The only issue on appeal is whether the bankruptcy court was correct that the note and release satisfied the original tort, thus allowing discharge of the debt under 11 U.S.C. ¶ 523(a)(4). This is a matter of law properly reviewed *de novo*.

■ The bankruptcy court accepted as true all Oltman's well-pleaded material allegations as the non-movant and drew all reasonable inferences from the pleadings in his favor in deciding West's motion for judgment on the pleadings. On *de novo* review, this court must do the same.

■ Oltman argues that 11 U.S.C. ¶ 523(a)(4) applies to the note and bars discharge of the debt. Section 523(a)(4) provides:

A discharge under Section 727 … of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny; …

Oltman contends that the note and release do not mean that ¶ 523(a)(4) can be avoided; the nondischargeability of the debt survives because of the underlying fraud. West counters—and the bankruptcy court held—that the note and release were a novation that precluded any claims upon the original obligation; all that is left are Oltman's claims under the note itself.

This case is controlled by *Maryland Casualty Co. v. Cushing*, 171 F.2d 257 (7th Cir.1948), in which the Seventh Circuit held:

The general rule is that a promissory note is but the evidence of indebtedness and does not discharge the debt for which it was given. And, of course, where a note is accepted only as evidence of a pre-existing debt and not as satisfaction or waiver of a tort action, acceptance of such a note will not itself waive the original cause of action. But if it is shown that the note, by express agreement, is given and received, as payment or waiver of the antecedent tort action, and if the agreement is that the note operates to discharge the original obligation and substitute a new one therefor—in other words, that it is taken in payment of the debt—then the original debt is fully satisfied by acceptance of the note.

*Id.* at 258–59 (citations omitted). In this case, as in *Maryland Casualty*, a note was executed as payment or waiver of the antecedent tort action. The release is an express agreement that substituted the note for the original obligation.[1] The original debt is fully satisfied and cannot be revisited. The debt has been replaced by the note, and the release specifically provides that Oltman will bring no claim against West except as maker of the note.

Oltman attempts to avoid the result mandated by *Maryland Casualty*, asserting that this court should rely on other authorities, including: (1) the intent of Congress in drafting the Bankruptcy Code; (2) a district court decision within the Seventh Circuit that conflicts with *Maryland Casualty*; (3) decisions in other circuits that conflict with *Maryland Casualty*; and (4) the Supreme Court holding in *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). None of these arguments are persuasive.

---

1. The bankruptcy court correctly pointed out that even if Oltman had not executed the release, the debt would still be dischargeable if other evidence established that West made the note in complete settlement of Oltman's tort claim. Rec. at 6, Memorandum Opinion at 5, n. 3; *see, e.g., In re Kimzey,* 761 F.2d 421, 425 (7th Cir.1985) (¶ 523(a)(6) claim for willful and malicious conversion held dischargeable when note was given and partial payment made).

■ First, Oltman's reliance on congressional intent overstates the reach of the Bankruptcy Code. Section 523(a)(4) of the Code manifests a policy decision to not allow discharge of debts incurred by fraud, defalcation, embezzlement or larceny. The Bankruptcy Code was enacted against the background of common law contract precedent, however. Congress did not intend for the underlying fraud, defalcation, embezzlement or larceny to survive in all circumstances. The parties themselves may terminate a tort claim by substitution of a note or other settlement; the contract then supersedes the tort. The issue in each case is whether there is a valid waiver of the underlying tort claim. If there is no waiver, then the underlying tort survives and ¶ 523(a)(4) manifests a congressional policy of nondischargeability. The question of whether a note is merely evidence of an underlying obligation or an accord and satisfaction of the obligation (the distinction articulated in *Maryland Casualty*) is still the key distinction for dischargeability. The Code did not end the distinction between these two factual patterns. *See, e.g., In re O'Brien*, 154 B.R. 480 (Bankr. W.D.Tenn.1993) (embezzlement debt nondischargeable in absence of evidence note was given in satisfaction of underlying tort).

■ Second, Oltman's reliance on *In re Schmidt*, 70 B.R. 634 (N.D.Ind.1986) is misplaced. *Schmidt* states that a mutual release in settlement of a fraud claim nondischargeable in bankruptcy would not be dischargeable in bankruptcy. *Id.* at 644. However, this statement is *dictum*.[2] This court is bound by the Seventh Circuit and not by *dicta* of other district courts within the Circuit.

Third, Oltman's reliance on decisions in other circuits that conflict with *Maryland Casualty* is also misplaced. Oltman's arguments are principally buttressed by *Greenberg v. Schools*, 711 F.2d 152 (11th Cir.1983) and its progeny. *See, e.g., In re Spicer*, 155 B.R. 795 (Bankr.D.Colo.1993); *In re Carnahan*, 115 B.R. 697 (Bankr. D.Colo.1990); *In re Bobofchak*, 101 B.R. 465 (Bankr.E.D.Va.1989); *In re Rush*, 33 B.R. 97 (Bankr.D.Me.1983). In *Greenberg*, the Eleventh Circuit allowed the nondischarge of a debt even though there had been a settlement of the underlying fraud, stating "a debt which originates from the debtor's fraud should not be discharged simply because the debtor entered into a settlement agreement." *Id.* at 156. The *Greenberg* decision is not dispositive in the face of *Maryland Casualty*.

Fourth, the Supreme Court's decision in *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), is not dispositive. *Brown* held that *res judicata* does not bar a bankruptcy court from inquiring into the underlying facts behind the settlement of a state court case. In *Brown*, the parties settled their dispute by stipulation. When the defendant, Felsen, later declared bankruptcy, the plaintiff, Brown, wanted to establish that Felsen's debt to him was nondischargeable under ¶ 523(a)(4). The Court held that *res judicata* did not preclude considering whether the liability adjudicated in the state court proceeding was nondischargeable. Accordingly, Felsen's debt was potentially nondischargeable under ¶ 523(a)(4). Oltman reads *Brown* as allowing debts that have been settled or otherwise released to be resuscitated by a bankruptcy.

It is the duty of a district court to follow the precedents of its circuit court of appeals.[3] *Maryland Casualty* is binding in the Seventh Circuit. The scope of *Brown* is unclear. Cases within the Seventh Circuit that have relied on *Brown* have involved the *res judicata* or collateral estoppel effect of state court proceedings. *See, e.g., Klingman v. Levinson*, 831 F.2d 1292 (7th Cir.1987); *In re Maurice*, 138 B.R. 890 (Bankr.N.D.Ill.1992); *In re Rudd*, 104 B.R. 8 (Bankr.N.D.Ill.1987); *In re Wade*, 26

---

**2.** The issue in *Schmidt* was whether the mutual release itself was a fraud.

**3.** *See Union Carbide Corp. v. Consolidated Rail Corp.*, 517 F.Supp. 1094, 1097 (N.D.Ill.1981) (a district court should not weigh other authority in the presence of direct precedent from its court of appeals).

B.R. 477 (Bankr.N.D.Ill.1983). There has been no Seventh Circuit decision that extends *Brown* to settlements or novations outside state court proceedings.[4] This court is bound by *Maryland Casualty*.

### CONCLUSION

The decision of the bankruptcy court granting judgment on the pleadings is affirmed.

---

**4.** Oltman points to *In re Schmidt,* 70 B.R. 634, 644 (N.D.Ind.1986) as a case within this Circuit that holds a mutual release in settlement of a fraud claim would not be dischargeable. However, the *Schmidt* court makes this statement as pure *dictum.* In *Schmidt,* the mutual release was not in settlement of a fraud claim. *Schmidt* supports its *dicta* by referring to *Greenberg,* an Eleventh Circuit case.