MRS. LATTA B. JETTON, et al. v. J. W. NICHOLS, et al.

Western Section. June 22, 1928.

Petition for Certiorari denied by Supreme Court, February 9, 1929.

568

Taylor, Adams & Freeman, of Trenton, for appellant.
W. W. Herron and W. R. Kinton, of Trenton, for appellee.

SENTER, J. Upon the insolvency of J. W. Nichols an insolvent bill was filed in the chancery court of Gibson county, styled W. R. Landrum, Ex'tr v. Ross B. Nichols, et al. Upon motion by complainants they were permitted to file an original bill to determine the priority of liens between the complainants and I. G. Wright on a certain tract of land owned by defendant, J. W. Nichols. Pursuant to the permission granted by the court the original bill was filed in this cause on October 13, 1925, by complainants and against the defendant, in which Mrs. Latta B. Jetton asserted a prior lien over a lien claimed by defendant, I. G. Wright, on the tract of sixty-eight and seven-tenths acres of land. The answer of defendant, I. G. Wright, denied the allegations in the bill by which Mrs. Jetton claimed a superior lien to the lien which he claimed to have held on the sixty-eight and seven-tenths acres in question.

The regular Chancellor having recused himself, the Hon. W. W. Bond, Circuit Judge, sitting in the place of the regular Chancellor, heard and disposed of the case. The original bill called for a jury to try the issues of fact and a jury was impaneled and issues of fact made up, but during the progress of the trial, the court reached the conclusion that the questions involved were purely questions of law, and discharged the jury. To this action of the court the complainants excepted. At the conclusion of the hearing of the evidence, the Chancellor held and so decreed that the defendant, I. G. Wright, held the superior lien on the land.

From this action of the Chancellor the complainants have perfected their appeal to this court, and have assigned numerous errors which will be hereinafter referred to and disposed of.

It appears from the record, that in 1919 the defendant I. G. Wright, being the owner of a tract of land containing 193 acres,

situated in Gibson county, Tennessee, and described in the pleadings, sold and conveyed the entire tract to J. H. Morgan for the consideration of $30,000, evidenced by certain promissory notes; one for the sum of $1000, due January 1, 1920; one for the sum of $9000, due January 1, 1920; and five notes for the sum of $4000 each, all dated November 12, 1919, and due January 1, 1921, January 1, 1922, January 1, 1923, January 1, 1924, and January 1, 1925, respectively. A lien was specifically retained in the lands conveyed and recited in the deed and in the face of the notes. This deed was dated November 12, 1919, and was duly recorded in the register's office of Gibson county on November 18, 1919.

On December 31, 1919, J. H. Morgan conveyed to J. W. Nichols the sixty-eight acres involved, and as a part of the consideration J. W. Nichols assumed the payment of one of the $4000 notes executed by Morgan to Wright, and also assumed the payment of the sum of $2877, on another one of the $4000 notes executed by Morgan to Wright. This constituted the entire consideration in the deed executed by Morgan to Nichols.

On October 20, 1920, J. W. Nichols conveyed the sixty-eight acres to A. N. and M. C. Robinson. In this conveyance A. N. and M. C. Robertson assumed the payment of the $2870 balance on one of the notes assumed by Nichols in his purchase from Morgan, and executed, as the balance of the consideration, three separate notes payable to J. W. Nichols, each of the sum of $1399.49. This deed recites a lien to secure the notes, and further recites that the land is unencumbered except as to the $2870, being a part of the $4000 note, the payment of which Nichols had assumed. This sixty-seven or sixty-eight acres of land was a part of the land conveyed by Wright to Morgan, by deed of November 12, 1919.

It appears that at that time Nichols was indebted to complainant, Mrs. Latta B. Jetton, and that said note to Mrs. Jetton was past due and unpaid. J. W. Nichols desired to have the note extended, or rather a new note for the balance owing to Mrs. Jetton, amounting to $1215.77, and on July 25, 1921, J. W. Nichols executed his note to Mrs. Latta B. Jetton for the balance which he owed to her, $1215.77, due and payable one year after date, with J. W. Branson and Mack Morris as sureties on the note. In order to procure Mrs. Jetton and her sureties to accept the new note, which was but a renewal of the amount of the balance on the original note, Nichols put up one of the $1399.44 notes, being the first maturing of the three, executed by Robertson to Nichols, which was due and payable July 1, 1923, as collateral to the $1215.77 note. The said collateral note having been duly endorsed and transferred as a collateral note securing the $1215.77 note.

On March 3, 1922, A. N. Robertson and wife reconveyed this tract of sixty-eight acres to J. W. Nichols, for the recited consideration of $7,764.78, of which $100 was paid in cash, and that Nichols again assumed the payment of the $2870 balance with interest on one of the $4000 notes executed by Morgan to Wright, and by the return of the three promissory notes executed by A. N. Robertson and wife to Nichols, being the three notes given by Robertson and wife to J. W. Nichols. This deed was filed for registration and recorded on January 5, 1923. It is not explained why this note executed by Robertson and wife to Nichols and transferred by Nichols as collateral security to Mrs. Jetton, was not demanded by Robertson and wife of Nichols at the time Robertson and wife reconveyed the property to Nichols and in which deed it is recited that these three notes were cancelled and surrendered up. The first of the three notes had been transferred by Nichols to Mrs. Jetton as collateral security to the note which he executed to her on July 25, 1921.

On January 4, 1923, Wright executed a release instrument releasing to Nichols the encumbrance held by him on that portion of the lands which he had conveyed to Morgan and which Morgan had conveyed to Nichols, being the sixty-eight and seven-tenths acres, which Nichols had in turn conveyed to the Robertsons, and which they had reconveyed to Nichols. On the same date and simultaneously with the execution of the release deed, Nichols executed to I. G. Wright his note in the sum of $3571-65, due one year after date, and at the same time executed a trust deed on said sixty-eight and seven-tenths acres securing the note of $3571.65 to Wright. The $3571.65 represented the balance of $2870 on the $4000 note assumed by Nichols, plus the interest thereon.

It appears that J. W. Nichols, after this sixty-eight-acre-tract had been reconveyed to him by Robertson and wife, desired to segregate the amount of encumbrance on this particular portion of the entire tract which Wright had conveyed to Morgan, and to have the amount of said original debt, the payment of which he had assumed in the deed from Morgan to Nichols and which had in turn been assumed by Robertson and wife in the deed from Nichols to Robertson and wife, and which had been again assumed by Nichols in the deed from Robertson and wife to Nichols, so segregated and apportioned that the sixty-eight acres would only be encumbered for the proportionate amount of the encumbrance on the entire tract, this sum being the $2870 plus the interest thereon. Wright agreed to this arrangement, and in pursuance thereof he agreed to and did execute the release instrument releasing all claims under his deed from himself to Morgan, on the Nichols land, but with the agreement that Nichols would execute a separate and

new note covering the $2870, the payment of which he had assumed, of the original debt, plus the interest thereon, and pursuant to that agreement and arrangement Nichols executed his note for said sum of $3571.65, and at the same time executed a trust deed on the sixty-eight and seven-tenths acres which he owned securing said note to Wright. Both the release deed and the trust deed were filed for registration in the registers office on January 4, 1923. The release deed was filed for registration, or marked filed forty-five minutes before the trust deed was marked filed for registration.

Upon these facts as found by the Chancellor, or rather the acting Chancellor, it was held by the acting Chancellor that the transaction did not operate to release the lien which Wright had in the sixty-eight and seven-tenths-acre-tract owned by Nichols, and the new loan extended to Nichols in taking the new note of $3571.65, was not, therefore, in fact or in law, a novation, but simply a transaction by and through which the proportionate part of the encumbrance debt on the entire tract was segregated, and apportioning to the Nichols tract its proportionate part of the encumbrance debt, which was a lien on the entire tract.

Certain of the assignments of error are directed against this holding of the special Chancellor. It being contended under certain of the assignments that the release deed or instrument executed by Wright to Nichols, above referred to, operated as a novation of the original lien notes, and that the note executed by Robertson and wife to Nichols, and by Nichols transferred as collateral security to Nichols note to Mrs. Jetton, and having been executed prior to the release deed, gave to it priority over the note executed by Nichols to Wright and secured by the trust deed.

It is the contention of appellee, Wright, that the transaction between Nichols and himself by which Wright executed the release deed, and accepted the new note of Nichols secured by a trust deed, and the transaction occurring simultaneously, that is the release deed was executed at the same time the new note was taken and the trust deed on the sixty-eight and seven-tenths acres was executed by Nichols, was not a novation, but was a continuation of the same encumbrance debt put into a new form, without any intention upon the part of the parties that Wright was surrendering his lien under the original notes by accepting the new note secured by the trust deed, and that the transaction was the result of the desire of the parties to segregate and separate Nichols part of the encumbrance debt, and so as to relieve the Nichols sixty-eight-acre-tract from the whole encumbrance on the entire tract.

Thus we have the respective contentions of the respective parties on this subject.

Appellant, in the excellent brief filed, refers us to certain excerpts from 20 R. C. L., on the subject of "Novation," as for instance: "A new obligation given by a debtor to a creditor to secure the release of a lien is a novation of the original obligation." This excerpt is from Sec. 5, on page 364, 20 R. C. L., under the general head of "substitution of new debt or contract generally," wherein it is further stated: "A novation may be made by the substitution of a new obligation or contract between the same parties with intent to extinguish the old obligation or contract." Under the same article, and on the same subject, it is further stated: "Whether the taking of a new security of equal dignity is to be treated as a novation or substitution for an extinguishment of a prior indebtedness, is a matter of intention to be determined from all the facts and circumstances of the case. But in the absence of satisfactory proof to the contrary, the presumption is that the debt has not been extinguished by taking a new evidence of the indebtedness. . . ."

In the case of Henry v. Nubert, 35 S. W. 444, is contained the following definition of "novation":

"Novation briefly defined is the substitution of a new obligation for an existing one. It means that there being a contract in existence, some new contract is substituted for it whether between the same parties or between different parties, the consideration mutually being the discharge of the old contract."

Appellant also quotes from Workmen's Building Ass'n v. Williams, 37 S. W., 119, as follows:

"Novation is the substitution of a new obligation for an old one which is thereby extinguished."

In that case it is further said:

"While it is true a novation will not be presumed, and largely depends upon the intention of the parties, this intention is evidenced by the act and contracts of the parties and their acts and contracts insofar as the rights of third parties are concerned will be conclusive."

The question as to whether or not a subsequent contract or agreement is intended to operate as a release of a lien then existing, is as a general proposition one of intention of the parties to the transaction, and this intention to be derived from all the facts and circumstances surrounding the transaction. A novation is never pre-

sumed. (Sharp v. Fly, 68 Tenn., 9-11.) In the same case it is also held: "It is a familiar principle that a mortgage being given as security for a debt the general rule is that no mere change in the mode and time of payment, nothing short of the actual payment of the debt, or an express release, will operate as a discharge of the mortgage. The lien lasts as long as the debt."

But the contention is made by appellant that the release deed in specific terms states that it is the intention that the original debt be discharged, and that these provisions contained in the release deed executed by Wright to Nichols become conclusive. While the recitations in the instrument recite that this particular sixty-eight acres is relieved of the lien burden applying to the entire tract originally conveyed by Wright to Morgan, yet, we think it clear from all the facts and circumstances surrounding the execution of the release deed by Wright, it was not intended as a discharge of that part of the lien debt assumed by Nichols. Nichols had assumed the payment of $2870, which was a part of the $4000 note executed by Morgan to Wright in the purchase of the entire tract. This indebtedness was past due, and Nichols desired not only to have his part of the debt extended, but it was clearly his purpose and desire to have the sixty-eight-acre-tract which he owned, and which was a part of the tract sold by Wright to Morgan, relieved of the general encumbrance debt which covered all the entire tract sold by Wright to Morgan, and to have his tract relieved of all the encumbrance and lien which applied to the whole tract, except so much of same as he had assumed to pay under the deed from Morgan to Nichols, and the balance remaining being the $2870 plus interest. It was in this situation that he proposed to Wright that a release deed be executed releasing his sixty-eight and seven-tenths acres from the whole lien debt, and take his note secured by a trust deed on his sixty-eight and seven-tenths acres as a means by which the entire lien debt covering the whole tract would be so segregated as to have the Nichols tract alone and separately encumbered by the $2870 which he had assumed to pay. This was agreed to by Wright, and he proceeded to execute the release deed in question, and simultaneously with the execution of the release deed by Wright, Nichols executed his note to Wright covering the $2870 and interest, his part of the debt, and at the same time executed a trust deed on the sixty-eight and seven-tenths acres to secure said note to Wright.

We think the rule is well settled that a lien cannot be revived after the payment of a lien debt. In Bank v. Bradley, 83 Tenn., 278, it is said in the fourth headnote: "If a debt, which is a lien on realty, be once paid by the debtor, the lien cannot afterwards

be revived to the prejudice of third persons by the creditor and debtor." However, in the same case, and the sixth headnote, it is further stated:

"An express lien on land for the purchase money, retained on the face of a deed of conveyance or by the decree of the court under which the land is sold, is equivalent to a mortgage lien, and is not lost by recovering judgment upon the purchase notes, and issuing execution thereon."

In 17 R. C. L., 611, under the subject of preservation of liens, it is said:

"22. In General:—It is a familiar principle of equity jurisprudence that a lien will be kept alive, where equity requires it, and the parties intended that it should not be extinguished. However, where the equity is a latent one, the lien will not be kept alive to the prejudice of a subsequent bona-fide purchaser. A lien discharged by mistake is, in contemplation of equity, still in existence. Thus, if a mortgagee takes a new mortgage in the place of an old one, not as payment, but in continuation of the old indebtedness, and cancels the old mortgage without knowledge of an intervening lien, although such lien is of record, equity, will in the absence of the intervening rights of third parties, and on the ground of mistake, restore and enforce the lien of the old mortgage, . . ."

In 37 C. J., 341, sec. 66, under the subject of keeping alive or restoring liens, it is said:

"A court of equity will keep alive or restore a lien where the equities of the case require it, and the parties intended that it should not be extinguished."

In 20 R. C. L., Sec. 6, page 365, it is said in part:

"6. Renewal of Note:—Generally, unless it is otherwise specifically agreed, if the holder of a promissory note takes a new note for the original debt, that is prima facie a conditional payment only—that is, the original debt will be extinguished on the payment of the substituted note and there is not a novation." (Citing numerous cases from numerous jurisdictions.)

It is stated by the same authority on page 366, sec. 8, under the head of the intention being the controlling element;

"In order to effect a novation there must be a clear and definite intention on the part of all concerned that such is the purpose of the agreement, for it is a well-settled principle that a novation is never to be presumed. The intention of the obligator that the existing debt should be discharged by the new obligation must be concurred in by both debtor and creditor.

The point in every case then, is, did the parties intend by their arrangement to extinguish the old debt or obligation and rely entirely on the new, or did they intend to keep the old alive and merely accept the new as further security, and this question of intention must be decided from all the circumstances.''

As above stated we are of the opinion that this record clearly discloses that it was not the intention of either Nichols or Wright that the original lien be extinguished. It was a new provision and arrangement for the segregation of Nichols portion of the original lien debt.

It is clear from this record that Wright never had any knowledge, actual or constructive, that Nichols had put up one of the Robertson lien notes as collateral security to Mrs. Jetton's debt and note. The deed from Robertson and wife reconveying this property to Nichols stated as a part of the consideration therefor that the three notes executed by Robertson and wife as part payment on the sixty-eight and seven-tenths acres were cancelled and discharged, and Wright did not have any knowledge, actual or constructive, that Mrs. Jetton held one of these Robertson notes, or that either of the Robertson notes had ever been transferred by Nichols to anyone. Any knowledge he may have had that Nichols had conveyed this sixty-eight and seven-tenths acres to Robertson and wife, and that Robertson and wife had executed lien notes in favor of Nichols, subject to Wright's prior lien, in view of the fact that Robertson and wife had reconveyed the property to Nichols, and Nichols was in possession of the same at the time Wright executed the release deed to Nichols and accepted Nichols new note for his proportionate part of the original lien debt secured by the trust deed, would not constitute actual or constructive notice to Wright that Mrs. Jetton or anyone else who held the Robertson note. Mrs. Jetton acquired the Robertson note from Nichols long prior to the time that the transaction occurred between Wright and Nichols. No appreciable length of time occurred between the time of the execution and recording of the release deed and the execution and recording of the trust deed securing Nichols note segregating his part of the debt. No new rights had intervened.

Under the facts and circumstances of this transaction we are of the opinion that the Chancellor reached the correct conclusion in holding and decreeing that the Robertson note held by Mrs. Jetton did not take priority over the lien of Wright in this sixty-eight and seven-tenths acres, and that Wright had the superior lien. The assignments of error based on these questions are overruled and disallowed.

Other assignments of error go to the question of estoppel based upon allegations contained in the sworn bill or pleadings filed by Wright in the previous suit for the enforcement of his lien on the balance of the land, not including the Nichols tract, wherein Wright stated that he was not claiming a lien in that proceeding on the sixty-eight and seven-tenths acres and also another portion of forty-four acres of the original tract, and alleging that the lien against the entire tract had been satisfied and discharged insofar as the sixty-eight and seven-tenths acres of land here involved was concerned. These assignments of error are based upon the action of the court in refusing to permit the complainants to amend the original bill by setting up the pleadings in the former suit and relying on the same as a judicial estoppel against Wright to now assert a lien on the sixty-eight and seven-tenths acres; also upon the action of the court in excluding the evidence of J. W. Nichols and I. G. Wright given in the former case, wherein it was testified by them respectively, in substance that the general lien on the whole tract had been discharged and satisfied and paid insofar as the same affected the sixty-eight and seven-tenths acres. Under these assignments of error the rule of a judicial estoppel is invoked.

The rule is well settled, especially in this State, that parties will be estopped to take an inconsistent attitude or position from that taken in a former suit involving the same matter. If, in a former suit statements are made under oath, either in the pleadings or in the evidence, inconsistent with the contention relied upon in a subsequent suit involving the same matters, the rule of judicial estoppel may be relied upon. In Johnson v. C. N. O. & T. P. R. Co., 146 Tenn., 135, the court quotes from the case of Stearns Coal & Lbr. Co. v. Jamestown R. Co., 141 Tenn., 206, where it is said:

"While the law of judicial estoppel is originally applied to one who has made oath to a state of facts in a former judicial proceeding, which in a later proceeding he undertakes to contradict, yet it is frequently applied where no oath is involved to one who undertakes to maintain inconsistent positions in a judicial proceeding."

In that case, the Johnson case, the court proceeds with this further statement:

"The principle underlying these decisions runs throughout the administration of justice, and is that a litigant who has deliberately taken a position will not, as a matter of law, be allowed to advantage himself by taking an inconsistent one either in the same or another suit."

In the case of Sartain v. Dixie Coal & Iron Co., 150 Tenn., 633, is an elaborate and comprehensive discussion of the subject of judicial estoppel on account of previous inconsistent statements, and

all the Tennessee cases on the subject are cited and discussed in the opinion, and all to the general effect that a judicial estoppel, will arise from sworn statements made in the course of judicial proceedings, generally in a former litigation, in the absence of showing that the alleged inconsistent statement was made inadvertently, or through mistake, and will operate to estop such party in a subsequent litigation involving the same matter, and where a position inconsistent with the former sworn statements is sought to be taken by the litigant.

Since all of the Tennessee cases recognizing this rule are collected and cited in the Sartain v. Dixie Coal Co. case, and all to the same effect, we deem it unnecessary to make special reference to each of these numerous cases. However, in all of the cases cited and referred to the alleged inconsistent statements were material, and showed that the litigant sought to take a different position than that taken in the preceding case. It therefore becomes necessary to determine whether the alleged inconsistent statements in the present case, are (1) really inconsistent with the position taken in the present suit; and, (2) if so, are the alleged inconsistent statements material? In the former suit referred to, and in which it is alleged inconsistent statements, both in the sworn pleadings and in the evidence, were made that the lien had been settled and discharged as to the sixty-eight and seven-tenths acres here involved, and also on another tract of forty-four acres sold to one Gibson, out of the larger tract conveyed by Wright to Morgan, Wright was seeking to enforce his lien for the balance of the purchase money on the portion of the tract which had not been sold to Nichols and to Morgan respectively. In the pleadings and in the proof it was stated by both Wright and Nichols that the lien had been settled or provided for as the same applied to the sixty-eight and seven-tenths-acre-tract and the forty-four-acre-tract, respectively, but the lien remained in force as to the balance of the tract conveyed by Wright to Morgan. In that case Wright was only seeking to enforce so much of the lien debt as applied to the remainder of the tract, and was not seeking in that proceedings to enforce a lien on the Nichols and Dickson parcels. The allegations in the bill and the pleadings, and the evidence, on the subject, were but an explanation as to why the lien covering on the entire original tract was not sought to be enforced in that proceedings against the Nichols portion of the original tract, and the Dickson portion of the original tract. It was immaterial in that case whether the lien on the Nichols and Dickson tracts had been extinguished or not. Wright was simply seeking to enforce the unpaid and unadjusted portion of the original lien debt which still covered on the entire

578

tract remaining after the two respective tracts had been sold off, and the lien segregated and apportioned so as to relieve the Nichols tract and the Dickson tract from the burden of the entire lien debt. We are of the opinion that under these facts the record offered by complainant, and the evidence sought to be introduced with reference to the former proceedings, were neither inconsistent nor material, and were properly excluded by the learned trial judge.

By other assignments of error it is said that the court erred in withdrawing the case from the jury and in refusing to submit the issues of fact to the jury.

Even though a jury had been called for to try the issues of fact, and where the jury has been impanelled and even where some evidence has been submitted to the jury, but if it appears that there is no material controversy as to the facts, and that the issues are purely questions of law, it is not only the prerogative of the Chancellor to withdraw the issues from the jury and discharge the jury, but in such cases it becomes the duty of the Chancellor to take that course. In such cases, if no real questions of fact are involved, or necessary to be determined by the jury, as they present questions of law only, these issues can only be determind by the court.

After a careful review of all the evidence and all assignments of error, we find no error in the decree of the Chancellor, and it is affirmed. The cause is remanded to the chancery court of Gibson county for the carrying out of the decree of the Chancellor. Appellants will pay the cost of this appeal.

Owen and Heiskell, JJ., concur.