IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 23, 2017 Session

## LESA C. WILLIAMS ET AL. v. RENARD A. HIRSCH, SR.

**Appeal from the Chancery Court for Davidson County**
**No. 09-425-III      Don R. Ash, Senior Judge**

_____

## No. M2016-00503-COA-R3-CV

_____

This is the third appeal in this declaratory judgment action. The action seeks a determination of whether a discharged attorney is entitled to compensation for his services in connection with a tort action that settled after his discharge. After a bench trial, the trial court determined that the discharged attorney's right to compensation was governed by a retainer agreement with the client, as modified by a subsequent letter agreement. The retainer agreement entitled the attorney, upon discharge, to compensation calculated at a reasonable hourly rate or one third of any offer made to settle the case, whichever was greater, plus expenses. Because no bona fide settlement offer was made before the attorney was discharged and the attorney provided insufficient evidence of the time he spent on the case, the trial court declared that the discharged attorney was not entitled to compensation. The trial court also awarded sanctions against the attorney for discovery abuse. Upon review, we discern no reversible error. So we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S. and ANDY J. BENNETT, J., joined.

Gary M. Kellar and Robert L. Smith, Sr., Nashville, Tennessee, for the appellant, Renard A. Hirsch, Sr.

Winston S. Evans, Nashville, Tennessee, for the appellees, Lesa C. Williams, Lesly J. Williams, Alana Williams, and the Estate of Lesly Williams, Sr.

James W. Price, Jr., Nashville, Tennessee, for the appellee, Aundreas Smith.

Jon D. Ross and Elizabeth S. Tipping, Nashville, Tennessee, for the appellee, Neal & Harwell, PLC.

**OPINION**

**I.**

**A.**

In the first appeal in this case, we described the background facts as follows:

> On October 1, 2005, Lesa C. Williams and her family were involved in a tragic motor vehicle accident. Following the accident, Ms. Williams, through her conservators, contacted attorney Aundreas Smith, a family friend with whom Ms. Williams shares a common sister-in-law, concerning the possibility of filing a personal injury lawsuit. Ms. Smith was employed at the time by Smith, Hirsch, Blackshear and Harris, PLC, and Ms. Williams eventually retained both Ms. Smith and Renard Hirsch, a partner at Smith, Hirsch, Blackshear and Harris, to represent her. The retainer agreement entered into by the parties provided that Ms. Williams would pay Ms. Smith and Mr. Hirsch a one-third contingency fee. Ms. Smith and Mr. Hirsch filed suit on behalf of Ms. Williams and her family on December 30, 2005.
>
> Ms. Smith left Smith, Hirsch, Blackshear and Harris, PLC in April of 2006. In October of 2006, the parties decided to associate Phil Elbert of Neal and Harwell, PLC to serve as lead counsel in the case. The agreement, signed by all three counsel and Ms. Williams, states that Neal and Harwell would receive 50% of the one third contingency fee.
>
> During the course of the litigation, Ms. Williams grew closer with Ms. Smith. At the same time, however, Ms. Williams became dissatisfied with Mr. Hirsch's representation. On January 3, 2008, Ms. Williams requested that Mr. Hirsch withdraw as counsel of record. Mr. Hirsch complied and, in March of 2008, filed a Notice of Attorney's Lien claiming "an undivided fifty percent of one-third of the total recovery." On May 22, 2009, the trial court approved a settlement awarding Ms. Williams a substantial recovery.

*Williams v. Hirsch* (*Williams I*), No. M2010-02407-COA-R9-CV, 2011 WL 303257, at *1 (Tenn. Ct. App. Jan. 25, 2011).

2

On March 5, 2009, Ms. Williams, relying on the original retainer agreement, filed this action in the Chancery Court for Davidson County, Tennessee, asking for a declaration either that Mr. Hirsch was not entitled to any compensation or that his compensation was limited to a reasonable hourly rate. In his answer, Mr. Hirsch denied that he was a party to the retainer agreement and asserted that the 2006 letter agreement with Neal & Harwell replaced the original agreement. He also moved for summary judgment claiming that Ms. Williams lacked standing. *Id.*

On January 27, 2010, the trial court granted Ms. Smith permission to intervene. The court also granted Mr. Hirsch's motion for summary judgment and dismissed Ms. Williams's complaint, but allowed Ms. Williams to file an interlocutory appeal. *Id.* Upon review, we held that Ms. Williams had standing, reversed the trial court's decision, and remanded for further proceedings. *Id.* at *2.

After remand, discovery ensued, and the court granted Neal & Harwell permission to intervene. *Williams v. Hirsch* (*Williams II*), No. M2012-01996-COA-R3-CV, 2013 WL 5230745, at *2 (Tenn. Ct. App. Sept. 13, 2013). Ms. Smith, Ms. Williams, and Mr. Hirsch also renewed their previously filed motions for summary judgment. *Id.* at *3. The trial court awarded summary judgment to "both sides" and divided the fee award among the three attorneys. *Id.* at *4. In the second appeal, we determined that the trial court's award of partial summary judgment was inappropriate in light of disputed material facts. So we reversed the court's judgment and again remanded for further proceedings. *Id.* at *8-9.

B.

Following the second remand and the assignment of a new judge, the trial court conducted a six-day bench trial. After hearing all the evidence, the trial court found that Ms. Williams, Ms. Smith, and Mr. Elbert were credible witnesses, but Mr. Hirsch was not.

Ms. Smith is related to the Williams family by marriage. In late October 2005, along with other family members, she rushed to the hospital after learning about the motor vehicle accident. Lesa Williams was in a coma. Her husband and daughter had died, and her minor son was in critical condition. Ms. Smith drafted a petition to appoint two family members, Mary Rougier and Vernae Coffee, as conservators for Ms. Williams.

The conservators asked Ms. Smith to represent the family in a personal injury and wrongful death action. Ms. Smith drafted a written agreement reflecting that she was being retained to provide all services related to the tort claim in exchange for a 33 1/3% contingency fee. Among other provisions, the retainer agreement included a discharge or withdrawal clause:

Client may, if unsatisfied with the services for any reason, discharge the attorney at any time; however, it is understood that client will pay attorney at time of discharge all fees and expenses then due, calculated at hourly rate set forth; or if contingent fee, a reasonable hourly rate or one third of any offer made to settle the case whichever is greater, plus expenses for the time expended. Attorney may withdraw at any time if attorney believes claim/cause of action lacks merit or is not fiscally practical to pursue. Discharge or withdrawal requires written notice mailed to last known address of attorney/client using Certified Mail with Return Receipt Requested.

When Ms. Smith and the conservators signed the agreement, the only attorney named in the agreement was Aundreas Smith.

At that time, Ms. Smith was associated with the law firm of Smith, Hirsch, Blackshear and Harris, PLC, and her practice focused on workers' compensation cases. Renard Hirsch, a member of the firm, practiced mostly in the commercial litigation and bankruptcy fields, but he had experience with personal injury actions. Ms. Smith and Mr. Hirsch orally agreed to work the Williams case together and to divide the contingency fee evenly.

Ms. Smith told the conservators that she wanted to add Mr. Hirsch as co-counsel on the tort litigation. They agreed, and Ms. Smith wrote Mr. Hirsch's name beside hers in the retainer agreement. But Mr. Hirsch never signed the agreement. Ms. Smith claimed that she gave Mr. Hirsch a copy of the agreement immediately after she added his name. But according to Mr. Hirsch, although he knew that Ms. Smith had a retainer agreement, he did not see the agreement or become aware that his name had been added until April 2006.

In any event, Mr. Hirsch and Ms. Smith immediately began working together on the tort case. They both did research on the potential defendants and the applicable law. On December 30, 2005, they filed the initial complaint, which they each signed as co-counsel. And afterward, they both drafted and signed additional pleadings and appeared in court when necessary.

When Lesa Williams emerged from her coma, she was told about the pending litigation and the decision to retain Ms. Smith and Mr. Hirsch. In January 2006, the conservatorship was removed, and Ms. Williams began handling her own affairs. After Ms. Smith reviewed the retainer agreement with her, Ms. Williams ratified it. When Ms. Williams reviewed the retainer agreement, Mr. Hirsch's name was listed as one of the attorneys. During this time, Ms. Smith also brought Mr. Hirsch to meet

4

Ms. Williams. According to Ms. Williams, Mr. Hirsch introduced himself as co-counsel, confirming her belief that he had been retained as co-counsel in the 2005 agreement.

After Ms. Smith left Mr. Hirsch's firm and opened her own office in April 2006, Mr. Hirsch and Ms. Smith continued their joint representation. They signed pleadings as co-counsel and appeared in court. And, notably, Mr. Hirsch accepted Ms. Williams's check for anticipated expenses in the tort case, deposited the client funds in his firm trust account, and paid the expenses as they became due.

But both attorneys realized that, due to the complexity of the litigation, they needed to retain more experienced counsel. After interviewing several different attorneys, they eventually chose Phil Elbert of Neal & Harwell based on his favorable track record in similar litigation. Ms. Williams agreed that Ms. Smith and Mr. Hirsch could retain Neal & Harwell as co-counsel if the attorneys were willing to divide the contingency fee.

Mr. Elbert drafted a letter reflecting the terms of the division. In the 2006 letter agreement, Neal & Harwell agreed to associate as co-counsel in the tort case in exchange for "one-half of one-third of the gross amount of any recovery" plus expenses unless the total gross recovery was $1 million or less. All three attorneys and Ms. Williams signed the 2006 letter agreement, indicating their approval. According to Ms. Smith, Mr. Elbert, and Ms. Williams, the 2006 letter agreement was intended to modify, not replace, the 2005 retainer agreement. But Mr. Hirsch maintained that the letter was a new retainer agreement.

As the case progressed, Ms. Williams became increasingly dissatisfied with Mr. Hirsch. And in December 2007, she decided to discharge him. She explained that, during a critical period in the case, she never saw his contribution and he never communicated with her. She asked Ms. Smith whether the discharge provision allowed her to fire any of her attorneys. After Ms. Smith said that it did, Ms. Williams drafted a discharge letter.

In January 2008, Ms. Williams notified Mr. Hirsch that he was discharged and asked him to provide an accounting of the time he spent on the tort case. But Mr. Hirsch never provided an accounting. Eventually he conceded that he did not maintain any time records during the tort case and could only guess at his time.

As requested, Mr. Hirsch moved to withdraw as co-counsel, and on February 13, 2008, the trial court granted his motion. On March 26, 2008, Mr. Hirsch filed a notice of attorney's lien for "an undivided fifty percent of one third of the total recovery, whether by settlement or at trial."

5

In December 2008, the remaining attorneys and Ms. Williams agreed to modify the division of the contingency fee. While the percentage of the contingency fee remained the same (33 1/3%), the parties agreed that Neal & Harwell would receive 60% of the fee, plus expenses, and Ms. Smith would receive 40%, plus expenses. But because Mr. Hirsch claimed entitlement to a share of the fee, as evidenced by his notice of an attorney's lien, the 2008 agreement included a provision allowing Mr. Hirsch to receive the full amount of any court-ordered compensation:

> Any portion of the Fee awarded Mr. Hirsch will be paid first from Ms. Smith's 40% share Fee, except that if Ms. Smith's portion of the Fee or payment for time actually spent by him working on the case is reduced down to as low as 25% by payments against Mr. Hirsch's claim, the next payments against Mr. Hirsch's claim shall come from Neal & Harwell's share of the Fee. However, regardless of the portion of the Fee or monies claimed or awarded to Mr. Hirsch, in no event shall Neal & Harwell receive less than 50% of the Fee in this case. Therefore, [f]or example, if Mr. Hirsch were to be awarded a sum equal to 15% of the Fee in this case, Ms. Smith's portion of the Fee would be reduced to 25%. If Mr. Hirsch were to prevail in his claim to a 25% portion of the Fee, the first 15% of the portion awarded to him would come from Ms. Smith's share of the Fee and the next 10% would come from Neal & Harwell's share, reducing Neal & Harwell's share to 50%.

## C.

The trial court found that the 2005 retainer agreement, as modified by the 2006 letter agreement, governed Mr. Hirsch's right to compensation. Although Mr. Hirsch did not sign the 2005 agreement,

> Ms. Smith possessed apparent authority to add Mr. Hirsch's name to the 2005 Agreement, and in any event, Mr. Hirsch's conduct is consistent alone with the theory Ms. Smith acted for him in executing the 2005 Agreement. Accordingly, ratification has occurred as a matter of law and Mr. Hirsch is estopped from denying liability under the 2005 Agreement made by his agent, Ms. Smith.

The court further found that Mr. Hirsch "failed to prove the parties intended the 2006 Agreement to operate as a novation of the 2005 Agreement." Based on the language of the 2006 Agreement and the parties' subsequent conduct, the court determined that the 2006 letter agreement only modified the contingency fee provision of the 2005 agreement. So the discharge provision remained effective.

Upon discharge, Mr. Hirsch was entitled to be paid "a reasonable hourly rate or one third of any offer made to settle the case whichever is greater, plus expenses for the time expended." Because the only settlement offer made before Mr. Hirsch was discharged was not a bona fide offer, the court declined to award Mr. Hirsch a fee on that basis. And in the absence of any proof regarding the reasonable value of his services, the court declared that Mr. Hirsch was not entitled to any compensation.

## II.

Of Mr. Hirsch's sixteen issues on appeal, many appear to be variations on the same theme. As we see it, Mr. Hirsch has raised three main issues[1]:

> (1) Did the trial court err in finding that Mr. Hirsch's compensation was governed by the 2005 retainer agreement as modified by the 2006 letter agreement?
> (2) Did the trial court abuse its discretion in granting Plaintiffs' motion in limine to preclude argument that the 2008 agreement evidenced unclean hands?
> (3) Did the trial court abuse its discretion in awarding monetary sanctions against Mr. Hirsch for discovery abuse?

In a non-jury case, our review of the trial court's factual findings is de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). Evidence preponderates against a finding of fact if the evidence "support[s] another finding of fact with greater convincing effect." *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). But in weighing the preponderance of the evidence, the trial court's findings of fact that are based on witness credibility are given great weight, and they will not be overturned absent clear and convincing evidence to the contrary. *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). We review a trial court's

---

[1] Mr. Hirsch also raises two subsidiary issues. First, he asks this Court to reconsider our previous ruling that Ms. Williams has standing to bring this declaratory judgment action. *See Williams I*, 2011 WL 303257, at *2. The law of the case doctrine "generally prohibits reconsideration of issues that have already been decided in a prior appeal of the same case." *Memphis Pub. Co. v. Tenn. Petroleum Underground Storage Tank Bd.*, 975 S.W.2d 303, 306 (Tenn. 1998). Although in limited circumstances an appellate court may choose to reconsider a previously decided issue, we decline to do so here. *See id.* (describing circumstances which may justify reconsideration of an issue decided in prior appeal).

Second, he contends that Ms. Williams lacked the authority to file this declaratory judgment action on behalf of the other Williams plaintiffs. Because Mr. Hirsch failed to raise this issue in the trial court, he cannot raise it now on appeal. *See Emory v. Memphis City Sch. Bd. of Educ.*, 514 S.W.3d 129, 146 (Tenn. 2017) ("[L]itigants must raise their objections in the trial court or forego the opportunity to argue them on appeal.").

conclusions of law de novo, with no presumption of correctness. *Kaplan v. Bugalla*, 188 S.W.3d 632, 635 (Tenn. 2006).

A.

After the accident, the conservators retained Ms. Smith to represent the Williams family in connection with their personal injury and wrongful death claims. When the 2005 agreement was executed, all parties to the agreement understood that Ms. Smith was the sole attorney subject to the terms of the agreement.

At issue here is whether the 2005 agreement was effectively modified to add Mr. Hirsch as a party. A contract "may be modified by the express words of the parties in writing or by parol, where both parties consent to such modifications." *Lancaster v. Ferrell Paving, Inc.*, 397 S.W.3d 606, 611 (Tenn. Ct. App. 2011). Both Ms. Smith and the conservators agreed to the modification, and Ms. Williams subsequently ratified the 2005 agreement as modified. But Mr. Hirsch maintains that he never authorized Ms. Smith to add his name or consented to be bound by the modified agreement.

In our view, the question turns on whether Mr. Hirsch ratified the modified 2005 retainer agreement. Ratification "occurs when one approves, adopts or confirms a contract previously executed 'by another[,] in his stead and for his benefit, but without his authority.'" *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 270 (Tenn. 2001) (quoting *James v. Klar & Winterman*, 118 S.W.2d 625, 627 (Tex. Ct. App. 1938)). By ratifying an unauthorized contract, the principal becomes bound by the contract terms just as if he had executed it originally. *Harber v. Leader Fed. Bank for Sav.*, 159 S.W.3d 545, 552 (Tenn. Ct. App. 2004). The principal's intent may be shown through "conduct of the purported principal manifesting that he consents to be a party to the transaction or from conduct justifiable only if there is a ratification." *Webber*, 49 S.W.3d at 270 (quoting *Osborne Co. v. Baker*, 245 S.W.2d 419, 421 (Tenn. Ct. App. 1951)). Ratification is a question of fact. *Id*. at 270.

The trial court found that Mr. Hirsch ratified the addition of his name to the 2005 agreement. The evidence does not preponderate against that finding. Mr. Hirsch first verified that the conservators had executed a retainer agreement and then proceeded to act as co-counsel. When the conservatorship ended, he informed Ms. Williams that he was co-counsel, appeared in court on her behalf, and later accepted her funds into his firm's trust account. He never told Ms. Williams he needed his own retainer agreement. And whether he knew his name had been added to the retainer agreement from the beginning or in April 2006,[2] he never voiced any objection. *See Harber*, 159 S.W.3d at 552 (noting that ratification may be "implied from silence").

---

[2] Although Mr. Hirsch claimed he was merely assisting another lawyer in his firm and was unaware his name had been added to the 2005 agreement, the trial court did not find his testimony

8

But the determination that Mr. Hirsch was bound by the 2005 retainer agreement does not end our inquiry. Mr. Hirsch contends that the 2006 letter agreement with Neal & Harwell operated as a novation that replaced and extinguished the previous agreement. "A novation is a contract substituting a new obligation for an old one . . . ." *Blaylock v. Stephens*, 258 S.W.2d 779, 781 (Tenn. Ct. App. 1953). Novation requires proof of four elements: "(1) a previous valid obligation, (2) an agreement supported by evidence of intention, (3) extinguishment of the old contract, and (4) a valid new one." *Crabb v. Cole*, 84 S.W.2d 597, 600 (Tenn. Ct. App. 1935) (quoting *Peoples Bank of Clifton v. Russ*, Wayne County Equity Opinion, (Tenn. June 6, 1932)). The party asserting novation has the burden of proving that all parties had a clear and definite intent to replace the old contract with the new one. *Jetton v. Nichols*, 8 Tenn. App. 567, 574-75 (1928).

Whether the parties intended a novation is also a question of fact. *Lowe v. Smith*, No. M2015-02472-COA-R3-CV, 2016 WL 5210874, at *7 (Tenn. Ct. App. Sept. 19, 2016). Evidence of the parties' intent may be shown through an express agreement or by subsequent conduct. *Bank of Crockett v. Cullipher*, 752 S.W.2d 84, 89 (Tenn. Ct. App. 1988). Although Ms. Williams, Ms. Smith, and Mr. Elbert denied that the 2006 agreement was intended as a novation, intent for a novation "may be implied from the facts and circumstances attending the transaction and the parties' subsequent conduct." *Cumberland Cty. Bank v. Eastman*, No. E2005-00220-COA-R3-CV, 2005 WL 2043518, at *4 (Tenn. Ct. App. Aug. 25, 2005); *see* 58 AM. JUR. 2D *Novation* § 26, Westlaw (database updated May 2018) ("A novation may be established either by direct evidence or circumstantially by proof of facts from which the intention to effect such an agreement may be reasonably implied.").

The language used in the 2006 letter agreement did not express a clear intent to replace the 2005 agreement. Rather, the letter agreement, by its plain terms, merely confirmed the division of the contingency fee with Neal & Harwell and left the rights and responsibilities of the client and other co-counsel unaddressed. Contrary to Mr. Hirsch's contention, the fact that the letter was addressed to Mr. Hirsch and Ms. Smith and referred to the ongoing litigation did not transform the letter into a new retainer agreement.

The parties' subsequent conduct also failed to support the claimed novation. Ms. Williams certainly acted as if the 2005 agreement remained effective. After she became dissatisfied with Mr. Hirsch's representation, she asked Ms. Smith what rights she had under the 2005 agreement. The language in her discharge letter was also consistent with the terms of the 2005 agreement. In 2008, Mr. Hirsch based his claim to

---

credible, and this record lacks sufficient evidence to overturn the court's credibility finding. *See Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

a share of the contingency fee on the 2005 agreement.[3]  And he admitted at trial that, after the 2006 letter agreement was signed, the 2005 agreement remained in effect for Ms. Smith.[4]

We conclude that the evidence does not preponderate against the court's finding that Mr. Hirsch failed to establish the requisite intent for a novation.  The 2006 letter agreement only modified the contingency fee provision of the 2005 agreement, leaving the remaining terms of the 2005 agreement in effect.  *See* 58 AM. JUR. 2D *Novation* § 2, Westlaw (database updated May 2018) ("[A] novation differs from a modification of a contract since a modification alters only certain portions of the contract, and leaves the original contract in place, while a novation substitutes a new contract and wholly extinguishes the earlier contract.") (footnotes omitted).  So Mr. Hirsch's right to compensation was governed by the discharge provision of the 2005 agreement.[5]

## B.

Based on the deposition of Mr. Hirsch's ethics expert, the trial court excluded any argument at trial that the 2008 agreement was unethical, evidenced unclean hands, or impacted Mr. Hirsch's rights.  Mr. Hirsch contends that the trial court's ruling improperly granted Plaintiffs summary judgment on his unclean hands defense.

---

[3] Mr. Hirsch told Ms. Williams's attorney that he was entitled to a share of the contingency fee "based on the retainer agreement which was executed by Ms. Williams'[s] conservators and subsequently acknowledged by her."  Mr. Hirsch contends that his statement was inadmissible because it was made during settlement negotiations.  *See* Tenn. R. Evid. 408.  Surprisingly, although the trial court initially sustained Mr. Hirsch's objection, Mr. Hirsch's counsel ultimately moved the letter containing the statement into evidence.  "[A] party to a lawsuit cannot complain of an error if he created the situation." *Waters v. Coker*, 229 S.W.3d 682, 690 (Tenn. 2007); *see* Tenn. R. App. P. 36(a) ("Nothing in this Rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.").  Under these circumstances, we conclude that Mr. Hirsch waived his objection.  *See King v. Sevier Cty. Election Comm'n*, 282 S.W.3d 37, 41 (Tenn. Ct. App. 2008) (noting that appellant could not object to the admissibility of a document that he offered into evidence himself).

[4] When asked whether "the 2005 retainer agreement [was] replaced by the 2006 Neal & Harwell letter as to all the terms," Mr. Hirsch replied:

> A. Well, Ms. Smith, when she left, took the 2005 retainer agreement with her.  So I guess she might be still under that.  But as far as me, my firm, once Ms. Smith left, this is the only agreement that we had, the 2006.

[5] Because we have concluded that Mr. Hirsch was bound by the terms of the 2005 agreement, as modified by the 2006 letter agreement, we need not address Mr. Hirsch's challenge to the trial court's alternative finding that he was discharged for cause.

We review the trial court's decision on a motion in limine for an abuse of discretion. *Singh v. Larry Fowler Trucking, Inc.*, 390 S.W.3d 280, 284 (Tenn. Ct. App. 2012). "A trial court abuses its discretion when it 'causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice.'" *Id.* (quoting *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011)).

A motion in limine allows a party to seek a pre-trial ruling on the admissibility of evidence expected to be offered at trial. *Duran v. Hyundai Motor Am., Inc.*, 271 S.W.3d 178, 192 (Tenn. Ct. App. 2008). It serves as "a substitute for an evidentiary objection at trial" and should not be used to obtain a dispositive ruling on substantive legal issues. *Id.*; *see also Harris v. White*, No. M2011-00992-COA-R3-CV, 2012 WL 1795086, at *8 (Tenn. Ct. App. May 16, 2012).

According to Mr. Hirsch, Ms. Smith and Mr. Elbert, with the consent of Ms. Williams, agreed to divide his share of the contingency fee among themselves and then tried to conceal their alleged misconduct in an effort to ensure they received a larger fee. To the extent that the trial court precluded this argument based on the absence of proof that the 2008 agreement was unethical, we agree that a motion in limine was not the proper vehicle for that determination. *See Duran*, 271 S.W.3d at 192; Tenn. R. Civ. P. 56.04. But we conclude that the error was harmless because the doctrine of unclean hands does not apply here. *See* Tenn. R. App. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process.").

The doctrine of unclean hands is a maxim of equity that allows a court "to decline to grant relief to parties who have willfully engaged in unconscionable, inequitable, immoral, or illegal acts with regard to the subject matter of their claims." *In re Estate of Boote*, 265 S.W.3d 402, 417 (Tenn. Ct. App. 2007) (footnote omitted). A court of equity cannot be used to aid a party in "profiting from [his or] her own misconduct." *Emmit v. Emmit*, 174 S.W.3d 248, 253 (Tenn. Ct. App. 2005). But this defense has limitations: "it must be confined to the particular matter in litigation and the conduct complained of must have injured the party making the complaint." *Edmisten v. Edmisten*, No. M2001-00081-COA-R3-CV, 2003 WL 21077990, at *7 (Tenn. Ct. App. May 13, 2003); *see Nolen v. Witherspoon*, 187 S.W.2d 14, 16 (Tenn. 1945); *Coleman Mgmt., Inc. v. Meyer*, 304 S.W.3d 340, 352-53 (Tenn. Ct. App. 2009).

When a plaintiff "is not asking the chancellor to enforce any right growing out of any transaction nor is he seeking injunctive relief or, in fact, any 'in personam' relief," and "asks only that the chancellor render a declaratory decree so . . . as to settle the controversy which exists," the doctrine of unclean hands does not apply. *Hogue v.*

11

*Kroger Co.*, 373 S.W.2d 714, 716 (Tenn. 1963).[6] Here, Plaintiffs asked the court to declare that Mr. Hirsch was not entitled to recover a fee or, alternatively, that he was only entitled to compensation for his services at a reasonable hourly rate. Plaintiffs are not asking the court to enforce their rights.

And, as explained above, Mr. Hirsch's right to compensation flows from the 2005 retainer agreement, as modified by the 2006 letter agreement. The remaining attorneys' subsequent agreement to alter the division of their portion of the contingency fee had no detrimental impact on Mr. Hirsch's fee. *See Nolen*, 187 S.W.2d at 16 (explaining that the conduct complained of must have "injured, damaged, or prejudiced the defendant").

At best, the alleged concealment efforts raised potential credibility issues. And the court allowed Mr. Hirsch to use the 2008 agreement for impeachment. His attorney elicited extensive testimony about the circumstances surrounding the discovery and eventual disclosure of the agreement and the impact of those circumstances on Plaintiffs' credibility. But after hearing all the evidence, the trial court found Ms. Smith, Ms. Williams, and Mr. Elbert credible, and this record does not contain sufficient evidence to overturn the court's finding. *See Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

C.

Finally, we turn to Mr. Hirsch's appeal of the trial court's award of monetary sanctions for discovery abuse. We review the trial court's decision under the abuse of discretion standard. *Laseter v. Regan*, 481 S.W.3d 613, 639 (Tenn. Ct. App. 2014). We will not overturn the court's decision unless the trial court misconstrued or misapplied the controlling law or the decision is against the substantial weight of the evidence. *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 133 (Tenn. 2004).

During discovery, Plaintiffs subpoenaed Mr. Hirsch's designated ethics expert, William Hunt, to appear for a deposition and bring certain documents. After Mr. Hunt failed to produce the requested documents or to answer a series of questions about communications with Mr. Hirsch, claiming attorney-client privilege, Plaintiffs filed a motion to exclude his testimony at trial as a sanction for discovery abuse. Although the trial court refused to exclude the expert's testimony, on November 6, 2015, the court ordered Mr. Hirsch to produce "all documents exchanged between Mr. Hunt and Defendant or his counsel" and to make Mr. Hunt available for another deposition.

---

[6] Plaintiffs argue that the unclean hands doctrine never applies in a declaratory judgment action. But the doctrine can be applied in a declaratory judgment action when the court has been asked to enforce rights arising from alleged misconduct. *See, e.g., In re Estate of Boote*, 265 S.W.3d at 418 (vacating trial court decision finding unclean hands doctrine inapplicable because the trial court used the wrong evidentiary standard); *Gossum v. Moore*, No. 2, 1991 WL 159893, at *5 (Tenn. Ct. App. Aug. 22, 1991) (affirming use of unclean hands doctrine in declaratory judgment action).

12

In response, Mr. Hirsch produced a few emails, none of which were dated before July 2015. During Mr. Hunt's second deposition, he disclosed that he had emails with Mr. Hirsch going back to 2012, and none of the older emails had been produced. This revelation stopped the second deposition. After Mr. Hirsch's attorney produced a computer disc containing hundreds of additional documents, including emails found on the computers of Mr. Hirsch and his attorneys, Plaintiffs' counsel pointed out that the court's order included emails on Mr. Hunt's computer. Mr. Hirsch's attorney then produced another disc containing more previously unseen documents. After all the requested documents were finally produced, Mr. Hunt's deposition resumed for the third time.

Plaintiffs moved for sanctions for discovery abuse. Because Mr. Hirsch failed to provide substantial justification for his noncompliance with the court's order, the court granted the motion and ordered Mr. Hirsch to pay the attorney's fees and expenses associated with Plaintiffs' original motion and with the two additional depositions of Mr. Hunt.

Tennessee Rule of Civil Procedure 37.02 authorizes the trial court to award a variety of sanctions for failure to comply with a discovery order, "including being found in contempt, having designated facts be taken as established, striking pleadings, [or] dismissing an action or claim or granting a judgment by default." *Mansfield v. Mansfield*, No. 01A019412CH0058, 1995 WL 643329, at *5 (Tenn. Ct. App. Nov. 3, 1995) (footnotes omitted); Tenn. R. Civ. P. 37.02. Whether or not the court chooses to award one of these sanctions, Rule 37.02 directs the court to "require the party failing to obey the order or the attorney advising the party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." Tenn. R. Civ. P. 37.02. Monetary awards under Rule 37.02 should not be excessive and must be directly related to the abuse. *Burnette v. Sundeen*, 152 S.W.3d 1, 4 (Tenn. Ct. App. 2004).[7]

We cannot say the trial court abused its discretion in ordering Mr. Hirsch to pay the attorney's fees and expenses caused by his failure to fully comply with the court's order.[8] The monetary sanctions awarded were directly related to the discovery abuse and

---

[7] We are unpersuaded by Mr. Hirsch's argument that trial courts are only authorized to award monetary sanctions in extreme cases. Although we have cautioned trial courts to use restraint when considering whether a harsh sanction such as dismissal or entry of default judgment is appropriate, the award of monetary sanctions does not raise the same concerns. *See Amanns v. Grissom*, 333 S.W.3d 90, 99 (Tenn. Ct. App. 2010); *Pegues v. Ill. Cent. R.R. Co.*, 288 S.W.3d 350, 354 (Tenn. Ct. App. 2008).

[8] Rule 37.02 is limited to sanctions for non-compliance with a court discovery order. *Alexander v. Jackson Radiology Assocs., P.A.*, 156 S.W.3d 11, 15 (Tenn. Ct. App. 2004). Thus, the attorney's fees

13

were not excessive under the circumstances. *See id.* Mr. Hirsch's repeated failure to comply with the court's order necessitated two additional depositions. And his explanation that he simply overlooked a few documents is insufficient. Mr. Hirsch produced hundreds of additional documents after Mr. Hunt's second deposition.

Mr. Hirsch now contends that the requested documents were not important to the case. Still, he did not fully comply with the court's order and provided no substantial justification for his failure to do so. Once the trial court ordered the documents produced, Mr. Hirsch's duty was to fully comply. *See Cofer v. Harris*, No. E2011-00242-COA-R3-CV, 2012 WL 112581, at *6 (Tenn. Ct. App. Jan. 12, 2012) (concluding that failure to fully comply with a court order to produce documents without substantial justification was sufficient basis for award of monetary sanctions regardless of whether the documents at issue affected the court's ultimate decision in the case).

## III.

We conclude that the evidence does not preponderate against the trial court's findings on ratification and novation. And although the court's partial grant of Plaintiffs' motion in limine may have been in error, any error was harmless. We also conclude that the trial court did not abuse its discretion in awarding sanctions against Mr. Hirsch for discovery abuse. So we affirm.

_____
W. NEAL MCBRAYER, JUDGE

---

associated with the motion to exclude Mr. Hunt's testimony at trial should not have been included in the award. But these fees could have been awarded under Rule 37.01 or under the trial court's inherent authority to order sanctions as necessary to prevent abuse of the discovery process. *See* Tenn. R. Civ. P. 37.01(4); *Laseter*, 481 S.W.3d at 639.